RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0308P (6th Cir.)
File Name: 01a0308p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TENNESSEE CONSOLIDATED
COAL COMPANY,

     *Petitioner,*

  *v.*

JACK KIRK; and DIRECTOR,
OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT
OF LABOR,

     *Respondents.*

No. 00-3316

On Appeal from a Decision of
the Benefits Review Board.
No. 98-1380 BLA.

Argued: August 2, 2001

Decided and Filed: September 6, 2001

Before: BOGGS and DAUGHTREY, Circuit Judges; and
WEBER, District Judge.[*]

_____

[*] The Honorable Herman J. Weber, United States District Judge for
Southern District of Ohio, sitting by designation.

1

---------------

**COUNSEL**

**ARGUED:** Ronald E. Gilbertson, BELL, BOYD & LLOYD, Washington, D.C., for Petitioner. Jennifer U. Toth, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents. **ON BRIEF:** Ronald E. Gilbertson, BELL, BOYD & LLOYD, Washington, D.C., for Petitioner. Jennifer U. Toth, Patricia Nece, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents.

---------------

**OPINION**

---------------

BOGGS, Circuit Judge. Petitioner Tennessee Consolidated Coal Co. ("TCC") appeals a final decision of the Benefits Review Board ("the Board") affirming an award to their former employee Jack Kirk, made pursuant to the Black Lung Benefits Act, 30 U.S.C § 901 *et seq.* Kirk had sought and been denied these benefits three times before, beginning in 1979. TCC claims that Kirk's fourth, successful, application was untimely. TCC also disputes that Kirk showed a "material change in condition" sufficient to overcome the preclusive effect of the prior denials. Finally, TCC argues that even if Kirk's application could be considered on its merits, the Board erred in affirming an award, because Kirk's respiratory illness was caused by his chronic cigarette habit rather than his employment in the mines.[1] We affirm.

---

[1] The government declined to brief the question of Kirk's ultimate entitlement to benefits. (Gov't Br. at 3 n.1).

shows a substantial decline in Kirk's respiratory health. For instance, in 1988 his Forced Expiratory Volume measure was 2.16 liters/second, below but near the regulatory threshold for total disability of 2.2 liters/second. By 1992, though, Kirk could only manage *.75 liters/second* on this measure. This decrease in pulmonary capacity, although not altering his legal status as "totally disabled," was obviously of profound practical and medical importance to Mr. Kirk, who by 1992 claimed to require continuous oxygen, together with other medical intervention.

This decline in health was correlated with a growing number of diagnoses of pneumoconiosis. Kirk's three treating physicians all considered pneumoconiosis a significant causal contributor to Kirk's illness as of 1992. Because of Kirk's long-term work in the coal mines, his pneumoconiosis is presumed to arise from his employment. 30 U.S.C. § 921(c). These findings, in conjunction, are consistent with the regulatory requirements for compensable black-lung. Although the employer can point to other 1992 medical opinions that find a smaller or absent causal role for pneumoconiosis, the ALJ and Board considered and discounted these. We may not reweigh these factual determinations. Because the ALJ's award is supported by substantial evidence and does not contravene applicable law, Mr. Kirk is entitled to benefits under the Act.

**III**

For the foregoing reasons, we AFFIRM the award of benefits.

According to the claimant, even the tasks of daily life were a constant struggle.

Several examinations of his case at that time, however, indicated that his chronic obstructive lung disease was primarily, if not entirely, a consequence of the estimated quarter-of-a-million cigarettes he had smoked. Essentially, TCC's core objection is that there is no substantial evidence that Kirk's total disability, which was not caused by pneumoconiosis in 1988, had suddenly become caused by this disease in 1992. The Sixth Circuit requires that a "miner must affirmatively establish that pneumoconiosis is a contributing cause of some discernible consequence to his totally disabling respiratory impairment." *Peabody Coal Co. v. Smith*, 127 F.3d 504, 507 (6th Cir. 1997). Since Kirk arguably already possessed a "totally disabling respiratory impairment," there is a certain logical appeal in wondering how even a gradually worsening case of pneumoconiosis could become contributory to this pre-existing condition.

Nonetheless, a close reading of the implementing regulations does not bar this result, and indeed supports the award in this case. "Pneumoconiosis is a 'substantially contributing cause' of the miner's disability if it: (i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or (ii) *Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.*" 20 C.F.R. § 718.204(c)(1) (emphasis added).

There was substantial evidence from 1992 that pneumoconiosis was present and that it had made Mr. Kirk's already poor condition even worse. Even presuming, with TCC, that in the absence of pneumoconiosis, Kirk's non-coal-related disease and exposure would still result in a "totally disabling respiratory or pulmonary impairment[,]" Kirk may nonetheless possess a compensable injury if his pneumoconiosis "materially worsens" this condition. A comparison of his pulmonary assessments in 1988 and 1992

## I

Jack Kirk was born in 1927, and ceased working in a coal mine in 1984 due to his increasingly severe respiratory problems; the parties have stipulated that Mr. Kirk worked in the mines for at least 15 years. Kirk filed his first claim for black-lung benefits in 1979. This was denied because medical evidence showed that Kirk (1) was not totally disabled, (2) did not have pneumoconiosis, and (3) such respiratory difficulties as he had were due to his cigarette smoking, a pack-a-day habit pursued for thirty-five years. At that time, Kirk reported some difficulty breathing at night, but indicated that he had sought no medical attention for his problem and that he was still able to work as a miner. Over the last two decades, however, there is no dispute that the record reflects a progressive deterioration of Kirk's condition.

Kirk's second application for benefits occurred in October 1985, just after he ceased working in any capacity for TCC.[2] This application was denied because there was no medical evidence to establish (1) total disability, or (2) pneumoconiosis. In denying the claim, the decision also noted "it would not be unusual" for people to have respiratory symptoms of the type experienced by Kirk if they were long-time smokers. Kirk's third application for benefits occurred in the year after his previous application had been finally denied, in August 1988. This claim was also denied on the grounds that he (1) had failed to show a material change in condition since his previous denial, (2) he did not show he had pneumoconiosis, (3) did not show that his problems were caused by coal mining, and (4) did not show that he was totally disabled "because of a breathing impairment caused by pneumoconiosis." *Cf.* 20 CFR § 718.204(b)(1) (defining the term "totally disabled" without reference to causation).

---

[2]From 1984 to 1985, Kirk was on "light duty" for TCC, rather than working directly as a miner.

Kirk's pulmonary test results, attached to the denial of his third application, demonstrated "total disability" under Part 718 regulations. His respiratory function had now declined below the levels specified in C.F.R. § 718(b)(2)(i)(B). Both parties agree that scores showing total disability were obtained. (Gov't Br. at 8; TCC Br. at 14). The rejection of Kirk's third application did not deny the presence of a breathing impairment constituting "total disability" as a general matter, but it reiterated the finding that Kirk's "breathing impairment" was not due to coal mining or pneumoconiosis.

The current claim for benefits was filed by Kirk in March 1992. Although Kirk's respiratory health had worsened by 1992, and his pulmonary capacity was further into the "totally disabled" range, his claim was initially denied. The reasons given by the district director were lack of total disability due to pneumoconiosis, and no change in material condition. The initial 1992 denial, unlike previous denials, did not rely on either the absence of pneumoconiosis or the failure of coal mining to contribute to pneumoconiosis. Although the form denial is not explicit, it appears to indicate a summary finding by the district director (not inconsistent with the medical evidence) that (1) Kirk did indeed have pneumoconiosis caused by his coal mining, and that (2) he was totally disabled, but that (3) the two were not causally connected, because the severity of Kirk's condition arose from his other respiratory ailments. Since these other respiratory conditions were not compensable (and not caused by coal mining), Kirk's claim was denied.[3]

Kirk sought review before an Administrative Law Judge ("ALJ") in 1993, and was awarded benefits in 1994. This decision was based on new medical opinions by Drs. Adcock and Soteres, who attributed Kirk's disability in substantial

---

[3]This reconstruction of the initial denial's findings approximates the position of petitioner TCC on the merits of Kirk's claim.

(6th Cir. 1990).[8]  We may therefore hold there to be substantial evidence to support the Board's more general point, that Kirk had demonstrated a "material change in conditions" sufficient to satisfy the statutory requirements.

### *Evidence for an Award of Benefits*

TCC's arguments challenging whether Kirk has demonstrated sufficient causation are most relevant to whether Kirk is ultimately entitled to benefits under the Act.[9] By 1988, Mr. Kirk was in bad shape. He had not worked in three years, and his pulmonary tests demonstrated a breathing impairment consistent with total disability from employment.

---

[8]It is noteworthy that a remand, urged by TCC, would almost certainly result in an ALJ decision in favor of claimant on this point. Such a decision, as TCC acknowledges, would be supported by substantial evidence and thus immune from review, making it unclear what jurisprudential purpose would be served by adopting TCC's position. On the other hand, Mr. Kirk has been waiting for more than nine years for a decision from the federal system regarding his black-lung benefits. Avoiding further years of delay on a remand with a foregone conclusion would certainly be, in the words of *Quarto Mining*, 901 F.2d at 536, avoiding "potential injustice."

[9]TCC has also argued that, prior to even considering Kirk's claim, the ALJ was required to assess the issue of causation as part of his "material change" inquiry. (TCC Br. at 30-33). It asserts that without consideration of causation, the "clear basis for the Department's final denial of benefits," the issue cannot even be reopened. This argument would increase the standard for finding material change beyond the one laid down in *Sharondale*. *Sharondale* contemplates an initial inquiry separate from the ultimate decision on whether to award benefits, and there is no need in the first stage for the ALJ to assess the previous denials' relative level of reliance on the alternative grounds used to deny the claim. It does not matter whether the rule requiring overcoming one element is perceived as belonging to the doctrine of issue preclusion, *Peabody Coal Co. v. Spese*, 117 F.3d 1001, 1008 (7th Cir. 1997) (en banc), or as a black-lung-specific rule used to accommodate in a structured way those miners whose conditions worsen over time, in line with the remedial purposes of the statute. *See Lisa Lee Mines*, 86 F.3d at 1362-64.

disabled" in 1988, and there could have been no *material* change in this condition.[7]

The Director asserts nonetheless that there is substantial evidence to support the finding of a material change, because there is substantial evidence that conditions have changed as to an element adjudicated against Kirk, the presence of pneumoconiosis. Even the initial denial of Kirk's claim in 1992 by the district director tacitly acknowledged that pneumoconiosis was now present. Although there had been some diagnoses of pneumoconiosis prior to 1992, its presence has become generally acknowledged among his treating physicians after the filing of his fourth claim. TCC admits that there is substantial evidence for the presence of pneumoconiosis, (TCC Br. at 16 n.5), but attempts to evade the consequence of this by claiming there was a diagnosis of it before. This is disingenuous, however, because the *Sharondale* standard requires only a substantial difference in the bodies of evidence, not a complete absence of evidence at the earlier time. If this difference can alter one of the legal bases of the prior claim denial, it is material.

Both the ALJ and the Board relied on the new evidence of pneumoconiosis throughout their opinion (as did the deputy director). A factual record has therefore been developed on this point, although not in direct reference to overcoming § 725.309(d). We may affirm on grounds different from those used by the Board if they are supported in the record. *See Director, OWCP v. Quarto Mining Co.*, 901 F.2d 532, 536

---

[7]Under the Act, there is a crucial distinction between "total disability" and "total disability due to pneumoconiosis," a distinction also of great practical importance in many cases aside from this one. District directors, ALJs, and the Board are therefore well-advised to craft their findings and decisions in such a way as to avoid any suggestion that these terms are in any way interchangeable.

---

part to coal-induced pneumoconiosis. The ALJ also relied on a 1988 diagnosis by Dr. Gilley, which had implied a similar etiology for Kirk's problems, but which had not been convincing enough to sustain Kirk's third application – notably, Gilley's 1988 diagnosis had not made an explicit finding of total disability.

TCC appealed the ALJ's 1994 decision and, although affirming in large part, the Board remanded it in 1996 for reconsideration in light of our intervening decision in *Sharondale v. Ross*, 42 F.3d 993 (6th Cir. 1994). This remand was with special reference to whether, under the *Sharondale* standards, Kirk's fourth application was timely filed and had established a material change in conditions. In 1998, the ALJ determined that, although Kirk had not done any mining work between 1988 and 1992, the communication of a new medical opinion to him in March 1992 (shortly after he filed his fourth application) should be deemed the start of the limitations period contained in C.F.R. § 725.308. The ALJ also determined that Kirk had shown a material change in conditions because Adcock and Soteres had found in 1992 that he was now totally disabled, and Kirk's "third claim had been denied by district director on January 18, 1989 for failure to establish either pneumoconiosis or total disability." Since the ALJ found Kirk had proven one of the elements "previously adjudicated against him[,]" *Sharondale*, 42 F.3d at 997, he concluded that a material change had been shown.

TCC appealed to the Board, which affirmed the ALJ's award in 1999. The Board held that the statute of limitations could not begin to run until a medical opinion had been communicated to the miner of a finding of "total disability due to pneumoconiosis." It found that neither of Dr. Gilley's (1985 and 1988) medical opinions had come to that conclusion and that Dr. Soteres's 1992 opinion was the first to do so. *Sharondale* had suggested that in order for the statute to begin *again*, an applicant miner, in addition to receiving a new medical opinion, must "work[] in the coal mines for a substantial period after the denial . . . ." 42 F.3d

at 996. The Board concluded that in this case this language was not determinative, and relied on *Sharondale*'s statement that a "claimant must be free to reapply for benefits if his first filing was premature." *Ibid.* The Board also affirmed the ALJ's finding that there had been a material change in conditions because the denial of the 1988 claim had been based not merely on "claimant's failure to show any disability was due to pneumoconiosis . . . [but] on the ground that claimant failed to establish any of the elements of entitlement, including total disability." The Board did not discuss Kirk's 1988 pulmonary tests.

TCC now appeals the Board's 1999 decision as erroneous on several grounds. It argues, *inter alia*, that the Board ignored one of the preconditions *Sharondale* imposed for restarting the statute of limitations, that the applicant return to work after the previous denial. TCC also asserts that the ALJ and the Board erred in finding Kirk's total disability in 1992 represented a "material change of condition," because Kirk was totally disabled well before that time. The claimant is not currently participating in the litigation. The Director, however, defends the Board's interpretation of *Sharondale*, and claims that even if TCC's argument regarding total disability is accepted, there was another clear basis for finding a change in condition, based on the new 1992 diagnoses of pneumoconiosis. (Gov't Br. at 40).[4]

## II

### *Standard of Review*

This court must affirm the Board's decision if the Board has not committed any legal error or exceeded its scope of review of the ALJ's determination. *Glen Coal Co. v. Seals*, 147 F.3d 502, 510 (6th Cir. 1998). The court reviews the ALJ's decision only to decide whether it is supported by substantial

---

[4]TCC considers this proposal for an alternate ground "outrageous." (TCC Reply Br. at 14)

been a legal error in the previous adjudication. In *Sharondale*, we held such situations were correctable within the one-year time period after a denial, but that after this point, a claimant is not "entitled to benefits simply because his claim should have been granted." 42 F.3d at 998. In order to maintain this limitation in favor of finality, and in order to measure a "*change* in conditions" the ALJ must compare the sum of the new evidence with the sum of the earlier evidence on which the denial of the claim had been premised. A "material change" exists only if the new evidence both establishes the element *and* is substantially more supportive of claimant.[6] *See id.* at 999 (despite ALJ finding that "new x-ray evidence established the existence of pneumoconiosis," remanding for an ALJ determination of "how the later x-rays differ qualitatively from those submitted in 1985").

The ALJ in this case made a legal error similar to that of the judge in *Sharondale* by failing to show that, on the element selected to show a material change, there was in fact a worsening of claimant's condition. In addition, the ALJ erred by misidentifying the elements of entitlement actually adjudicated against Kirk. The ALJ's finding on the current existence of "total disability" was not directly responsive to the key holding of the 1988 denial, that Kirk had failed to show "total disability *due to pneumoconiosis*" (emphasis added). If *this* is deemed the "element," then the ALJ failed to address that element. If, on the other hand, the "element" under consideration was "total disability" *simpliciter* – as the ALJ apparently believed – then there is evidence acknowledged by all parties that Kirk was already "totally

---

[6]The "change" in this phrase is the actual difference between the bodies of evidence presented at different times. The "materiality" of the change is marked by the fact that this difference has the capability of converting an issue determined against the claimant into one determined in his favor.

determination, a miner who has not subsequently worked in the mines will be unable to file any further claims against his employer, although, of course, he may continue to pursue pending claims.

*Evidence for a "Material Change" in Kirk's Condition*

Kirk's fourth claim occurred more than one year after the denial of his previous claim, and therefore was subject to denial unless Kirk could show there had been a "material change in conditions." 20 C.F.R. § 309(d). To assess whether a material change is established, the ALJ must consider all of the new medical evidence obtained after the previous denial, both favorable and unfavorable, and determine whether the miner has proven at least one of the elements of entitlement previously adjudicated against him. *Sharondale*, 42 F.3d at 997-98. If the miner establishes the existence of that element, he has demonstrated a material change as a matter of law, and the ALJ must then consider whether all of the record evidence, including that submitted with the previous claim, supports a finding of entitlement to benefits. *Ibid.*

TCC argues that, in addition to the above requirements, the new medical evidence must be compared with the preexisting medical evidence on the same issue. It claims that the ALJ and the Board failed to do this with regard to the 1992 evidence on total disability, and if they had done so, they would have discovered that 1988 pulmonary measures also showed "total disability." Thus, on this issue, TCC asserts, there was no "change in condition" and res judicata cannot be avoided on the ground actually used by the ALJ and the Board.

As the employer correctly points out, if the ALJ need only assess whether the new medical evidence proved an element previously held to have been missing, it would allow the relitigation of cases in which the new and old medical evidence were essentially the same, but in which there had

evidence and is in accordance with the applicable law. *Ibid.* We do not reweigh the evidence or substitute our judgment for that of the ALJ. *Gray v. SLC Coal Co.*, 176 F.3d 382, 387 (6th Cir. 1999). Thus, as long as the ALJ's conclusions are supported by the evidence, they will not be reversed, "even if the facts permit an alternative conclusion." *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995).

*The Timeliness of Kirk's Claim*

Claims for black lung benefits are presumptively timely. 20 C.F.R § 725.308(c). To be timely, the claim must have been filed before three years after a "medical determination of total disability due to pneumoconiosis" is communicated to the miner. 30 U.S.C. § 932(f); 20 C.F.R. § 725.308(a). Since the current claim was filed in March 1992, it is the employer's burden to rebut the presumption of timeliness by showing that a medical determination satisfying the statutory definition was communicated to Kirk prior to March 1989. If such a showing was made, we could then examine the analysis in *Sharondale* to determine if events following the determination may *restart* the statute of limitations. *See* 42 F.3d at 995-96.

As the ALJ and Board found, TCC has failed to demonstrate that a diagnosis of total disability due to pneumoconiosis was made prior to Dr. Soteres's in 1992. TCC points to the earlier denials, but these do not trigger the statute of limitations and are treated as premature filings not barring later applications. *See id.* at 996. TCC also briefly refers to the diagnoses of Dr. Gilley in 1985 and 1988, and Dr. Adcock's course of treatment after 1989, as constituting "medical determinations of total disability." (TCC Br. at 24-25). However, Dr. Adcock's notes do not show conclusively that he believed Kirk to be totally disabled prior to March 1989, and they certainly do not show a determination that pneumoconiosis was the cause. Although Dr. Gilley did diagnose Kirk with the initial stages of pneumoconiosis, he did not label him as "totally disabled" on that basis or any

other.  By contrast, the only determination that did arguably label him as "totally disabled" (although not in so many words),  the respiratory test submitted as part of his third claim, specifically denied that the disability was due to pneumoconiosis.    We have rejected as "medical determinations" under § 932(f) communications much more closely resembling the statutory definition than those relied upon by TCC.  In *Clark v. Karst-Robbins Coal Co.*, No. 93-4173, 1994 WL 709288, at *1 (6th Cir. Dec. 20, 1994), we held insufficient as a "determination" a successful worker's compensation claim which relied on a finding that the claimant "'became permanently and totally disabled . . . as the result of the occupational disease of pneumoconiosis . . .'"(quoting the language of the Kentucky worker's compensation award).    Based on the differences in the definitions of terms such as "totally disabled" between the different types of claims, we held that the worker's compensation finding did not start the running of the black-lung statute.    Although *Clark* is persuasive rather than precedential, given the far lower specificity of the putative "determinations" offered by TCC, they also must be considered incapable of starting the § 932 (f) clock.

TCC also attempts to fall back on general principles of accrual by arguing that Kirk had "notice" of his injury, and that "Mr. Kirk's applications dating back to 1979 reflect his belief that he was disabled due to pneumoconiosis at that time." (TCC Br., at 24).  However, the statute does not limit actions to three years "after they accrue" or use similar general language; it relies on the far more explicit trigger of the reasoned opinion of a medical professional.  Therefore, TCC's use of cases discussing general principles of accrual such as *United States v. Kubrick*, 444 U.S. 111 (1979), is mistaken.  Likewise, the statute makes what Kirk believes about his condition irrelevant to the initiation of the limitations clock.  To see the fallacy of TCC's position, one has only to note that if mere application for benefits were enough to start the clock running, our entire discussion of premature filing in *Sharondale* would have been pointless,

and the language in § 932(f) largely surplusage; in the rule advocated by the employer, there are no premature claims – only unwise ones that may foreclose compensation for later-developing pneumoconiosis.  The employer having failed to rebut the presumption of timeliness, the Board and the ALJ did not legally err in so holding.

TCC complains that our acceptance of Kirk's claim as timely implies it will never know when its liability for a particular miner will cease, defeating the purposes of a statute of repose.  They argue, essentially, that a miner will be able to infinitely file "claim after claim until they find a pliant ALJ" and a "compliant physician." *Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358, 1366 (4th Cir. 1996) (en banc) (Luttig, J., dissenting).  This is less problematic than TCC asserts.  The three-year limitations clock begins to tick *the first time* that a miner is told by a physician that he is totally disabled by pneumoconiosis. This clock is not stopped by the resolution of the miner's claim or claims, and, pursuant to *Sharondale*, the clock may only be turned back if the miner returns to the mines after a denial of benefits.  There is thus a distinction between premature claims that are unsupported by a medical determination, like Kirk's 1979, 1985, and 1988 claims, and those claims that come with or acquire such support.   Medically supported claims, even if ultimately deemed "premature" because the weight of the evidence does not support the elements of the miner's claim, are effective to begin the statutory period.[5]   Three years after such a

---

[5]This distinction deters finding "compliant physicians" willing to give the miner an overly-favorable diagnosis that cannot be supported by the weight of the medical evidence. A miner who develops total disability due to pneumoconiosis three years after such a premature determination will find that the "friendly doctor" has done him no favor.  Indeed, the chief danger with this rule, even given the constraint of communication to the miner, could be that "[u]nscrupulous employers could conveniently avoid all liability" by purposely making premature determinations. (Gov't Br. at 37 n.12).  We have no occasion in this case to address the risk-benefit ratio of such an illegal tactic (or the Director's extraordinary cynicism regarding America's coal industry).