RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0024P (6th Cir.)
File Name: 02a0024p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

PEABODY COAL CO.,
          *Petitioner,*

          *v.*

No. 00-3867

WILMA J. GROVES;
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
          *Respondents.*

On Appeal from the United States
Department of Labor, Benefits Review Board.
No. 99-0341 BLA.

Argued: December 4, 2001

Decided and Filed: January 17, 2002

Before: KENNEDY, MOORE, and COLE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Mark E. Solomons, GREENBERG & TRAURIG, Washington, D.C., for Petitioner. Helen Cox, UNITED STATES DEPARTMENT OF LABOR, OFFICE

1

OF THE SOLICITOR, Washington, D.C., Joseph H. Kelley, MONHOLLON & KELLEY, Madisonville, Kentucky, for Respondents. **ON BRIEF:** Mark E. Solomons, Laura Metcoff Klaus, GREENBERG & TRAURIG, Washington, D.C., for Petitioner. Helen Cox, Patricia M. Nece, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., Joseph H. Kelley, MONHOLLON & KELLEY, Madisonville, Kentucky, for Respondents.

MOORE, J., delivered the opinion of the court, in which COLE, J., joined. KENNEDY, J. (pp. 12-13), delivered a separate dissenting opinion.

––––––––––––––

## OPINION

––––––––––––––

KAREN NELSON MOORE, Circuit Judge. Petitioner Peabody Coal Co. ("Peabody") appeals an award of benefits under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-962. Peabody argues 1) that the administrative law judge ("ALJ") applied a "treating physician presumption" in violation of the Administrative Procedure Act, 5 U.S.C. §§ 551-559, and 2) that the ALJ's decision to rely on the treating physicians' medical opinions was irrational. Because Peabody's arguments lack merit, we **AFFIRM** the benefits award.

## I.  BACKGROUND

On April 30, 1995, sixty-year-old Elze Groves ("Groves") died in the emergency room of Ohio County Hospital. His death certificate identified the cause of death as cardiac arrest due to acute myocardial infarction and arteriosclerotic heart disease. Groves had worked underground in coal mines for over thirty-three years. On May 11, 1995, his widow Wilma Jean Groves ("Wilma") applied for black lung survivor's

benefits under the BLBA.[1]   On May 1, 1996, a district director of the Office of Workers' Compensation Programs ("OWCP") of the United States Department of Labor ("DOL") affirmed a previous finding that the evidence failed to establish that Groves had suffered from or died as a result of pneumoconiosis.   The DOL identified Peabody as the responsible coal mine operator and notified it of the pending claim.

At Wilma's request, the case was forwarded to the DOL Office of Administrative Law Judges for a hearing, which was held on April 29, 1997.  On June 30, 1997, the ALJ denied Wilma's claim.  He first found that Groves had suffered from pneumoconiosis, giving the most weight to the opinions of Drs. Robert T. Johnson ("Johnson") and W.B. Blue ("Blue"),[2] which were "supported by the well-documented and well-reasoned reports" of several other doctors who had examined Groves.  Joint Appendix ("J.A.") at 37-38.  However, the ALJ found that the evidence did not establish that Groves's death was hastened by pneumoconiosis:

> Only Dr. Blue opined that [Groves's] death was hastened by pneumoconiosis.   However, I find that Dr. Blue's opinion is outweighed by the well-reasoned and well-documented opinions of Drs. Branscomb and Fino.  To the contrary, Dr. Blue's opinion regarding the factors contributing to [Groves's] death is not well-documented. An undocumented opinion may be given little or no weight.

---

[1]Groves himself filed an application for benefits on November 7, 1988, which was denied on May 2, 1989.  Groves did not appeal this decision.

[2]Drs. Johnson and Blue were Groves's treating physicians.  Dr. Johnson was Groves's personal physician for approximately fifteen years, from 1973 to 1988.  Dr. Blue treated Groves from 1987 until Groves's death.

J.A. at 38 (citations and footnote omitted).[3] Wilma filed a timely notice of appeal with the Board. On July 14, 1998, the Board affirmed the ALJ's finding of pneumoconiosis but vacated his finding about Groves's cause of death and remanded the case for further consideration. The Board noted that the ALJ had described Dr. Blue's opinion as "undocumented" but failed to consider Dr. Blue's treatment notes, as he should have in determining the physician's credibility. J.A. at 24.[4]

On November 24, 1998, the ALJ issued a decision and order awarding survivor's benefits to Wilma. In finding on remand that Dr. Blue's opinion about Groves's cause of death was "the most credible," J.A. at 19, the ALJ referred to Dr. Blue's treatment notes, which recorded that Dr. Blue had treated Groves for breathing problems from 1987 to 1994.

---

[3]Dr. Ben V. Branscomb ("Branscomb") issued a consultative report dated August 23, 1996, in which he concluded "[w]ith a high level of medical certainty" that Groves did not suffer from pneumoconiosis. J.A. at 78. He attributed Groves's death to coronary artery disease, which he claimed "was in no way caused, hastened, []or . . . aggravated by pulmonary disease or by coal mine dust exposure." J.A. at 78. He then stated, "Although [Groves] has no [pneumoconiosis], if I assume he did, there would still be no reasonable basis for attributing any aggravation, contribution to, or acceleration of his death as a result of such pneumoconiosis." J.A. at 78.
Dr. Gregory J. Fino ("Fino") issued a consultative report dated September 4, 1996, in which he concluded with "a reasonable degree of medical certainty," J.A. at 81, that Groves did not suffer from pneumoconiosis and that his "death was due to atherosclerotic heart disease and acute myocardial infarction. Coal mine employment did not cause, contribute to, or hasten his death." J.A. at 93.

[4]Dr. Blue was not the attending physician at Groves's death. His treatment notes, therefore, do not cover the immediate cause of Groves's death. However, they were relevant to the ALJ's analysis to the extent that they addressed the factors that may have hastened Groves's death. *See Griffith v. Dir., OWCP*, 49 F.3d 184, 186 (6th Cir. 1995) ("A claimant establishes that pneumoconiosis is a substantially contributing cause or factor leading to the miner's death if it serves to hasten that death in any way." (quotation omitted)).

---

that pneumoconiosis did not increase the likelihood of coronary artery disease.[1] Simply dismissing the opinions of Drs. Fino and Branscomb, as the ALJ did, because they did not personally examine the patient or because they did not believe that Groves suffered from pneumoconiosis misses the point. The personal examination and treatment of Groves over the course of his lifetime does not obviously place Dr. Blue in a better position to determine whether one condition could have caused the other. If there were a reason to believe that personal examination would enable a treating doctor to better assess the possibility that two conditions were causally connected, then reliance on Dr. Blue's conclusion would be reasonable. But the ALJ gave no such reason. *See Peabody Coal Co. v. McCandless*, 255 F.3d 465, 468 (7th Cir. 2001). Further, Dr. Blue's opinion and treatment notes contain no objective support for his lack of oxygenation theory. Drs. Fino and Branscomb both discredit Dr. Blue's theory as unsupported, and the only objective medical support cited in the record undermines Dr. Blue's theory.[2] The ALJ failed to critically analyze Dr. Blue's causation theory or discount the opinions of Drs. Fino or Branscomb on any logical grounds. Hence, I would remand for further proceedings consistent with my dissent.

---

[1]Among the works cited by Dr. Fino were the article "Mortality From Heart Disease in Coal Miners," published by Dr. Coestello, et al., in the journal *Chest*, an article by Dr. Lindars in 108 *Journal of Pathology* 249-59, a textbook entitled *Occupational Lung Disorders* published by Dr. W. Raymond Parkes, the *Textbook of Occupational Lung Diseases* published by Morgan and Seaton, and a textbook entitled *Occupational Respiratory Disorders*, published by the U.S. Department of Health and Human Services.

[2]The ALJ also failed to address the qualifications of the doctors. Dr. Fino is a board-certified specialist in internal medicine and pulmonary disease. Dr. Branscomb is a Professor of Medicine at the University of Alabama at Birmingham, and has expertise in the diagnosis and treatment of pulmonary disease. Dr. Blue, however, has only a general practitioner's experience with pulmonary diseases.

————————

**DISSENT**

————————

KENNEDY, Circuit Judge, dissenting. Because I disagree with the majority's conclusion that the ALJ's decision was supported by substantial evidence, I would remand. The majority avoids this result by observing that this court has a limited scope of review over the Board's decisions and is not to assess the credibility of Dr. Blue. My decision to remand, however, would not be based on an assessment of Dr. Blue's credibility, but rather on the ALJ's failure to analyze the reasoning of, and support for, Dr. Blue's conclusion. The ALJ accepted Dr. Blue's conclusion that a lack of oxygenation to Groves' tissues, resulting from pneumoconiosis, contributed to Groves' arterial sclerotic heart disease, and ultimately, to his death. The ALJ found that Dr. Blue's treatment notes and letter supported this conclusion. In weighing the medical evidence, the ALJ gave the most weight to Dr. Blue's opinion because he had personally examined and treated Groves for nearly twenty-five years. Yet, the ALJ failed to explain why the personal examinations or treatment notes are sufficient to support a conclusion that the lack of oxygenation *caused* the arterial sclerotic heart disease that killed Groves. Certainly, the ALJ is entitled to give extra weight to a treating physician's assessment of a patient's condition. But I can see no reason why a treating physician's opinion that one condition caused or contributed to another should be accepted in the face of expert opinions to the contrary, at least where there is no logical explanation for doing so offered by the ALJ. Here, Drs. Fino and Branscomb both rejected Dr. Blue's theory with regard to causation. Although Dr. Branscomb did not believe that Groves suffered from pneumoconiosis, he stated that even if he assumed he did, there would be no reasonable basis to conclude that it contributed to, aggravated, or accelerated Groves' death. Dr. Fino also noted that Dr. Blue's causation theory was not supported by any valid, objective evidence. Dr. Fino's opinion then cited to several studies concluding

J.A. at 15-16. The ALJ then quoted verbatim a report submitted by Dr. Blue on February 2, 1996, that opined:

> Groves was a product of many years in the mines with the primary lack of oxygenation to his tissues speeding his death significantly. His immediate cause of death was the coronary artery disease which was largely a result of the chronic low oxygen assaturation superimposed on his metabolic abnormalities of sugar and lipids. It is my opi[ni]on that his pneumoconiosis was probably a third to a half responsible for his final demise.

J.A. at 16-17. The ALJ specifically found that Dr. Blue's "treatment notes, which show that [Groves's] lung function was impaired, support Dr. Blue's letter of February 2, 1996, and bolster his credibility." J.A. at 18. In contrast, he found that the opinions of Peabody's experts were entitled to less weight because they "failed to find any evidence of pneumoconiosis." J.A. at 18. On December 18, 1998, Peabody filed a timely appeal to the Board from the ALJ's decision.

On December 22, 1999, the Board affirmed the ALJ's decision, observing that the ALJ's decision to accord the greatest weight to Dr. Blue's opinion about Groves's cause of death was rational because Dr. Blue had treated Groves "for a lengthy period of time" and Dr. Blue's conclusion about a decrease in oxygenation to Groves's tissues, which hastened his death, was credible. J.A. at 11. The Board also stated that the ALJ had permissibly accorded less weight to the opinions of physicians who had not examined Groves and who had "ruled out the existence of pneumoconiosis in [Groves], when in fact the presence of the disease had been established." J.A. at 11. Peabody then filed a motion for reconsideration, which the Board denied on May 17, 2000. This timely appeal followed.

## II. ANALYSIS

We have a very narrow scope of review over the Board's decisions, which must be affirmed unless the Board has committed legal error or exceeded its scope of review of the ALJ's findings. *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). The ALJ's findings are conclusive if they are supported by substantial evidence and are in accordance with the applicable law. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cross Mountain Coal, Inc. v. Ward*, 93 F.3d 211, 216 (6th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Tennessee Consol.*, 264 F.3d at 606. Thus, we will not reverse the conclusions of an ALJ that are supported by substantial evidence, "even if the facts permit an alternative conclusion." *Id.* (quoting *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).

### A. "Treating Physician Presumption"

The survivors of a miner are eligible for benefits under the BLBA if they can prove 1) that the miner had pneumoconiosis, which arose out of coal mine employment, and 2) that the miner's death was due to pneumoconiosis. 20 C.F.R. § 718.205(a). Claimants may satisfy the second requirement by showing that pneumoconiosis was "a substantially contributing cause" of the miner's death. *Id.* § 718.205(c)(2). Peabody argues that "[t]he ALJ found both the existence of pneumoconiosis and death due to it by presuming that the opinion of a doctor who treated the miner was automatically more credible than any other doctor's opinion simply by virtue of that treatment." Petitioner's Br. at 18.

In *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036 (6th Cir. 1993), we confirmed that the "opinions of treating physicians are entitled to greater weight than those of non-treating physicians." *Id.* at 1042. However, we did not suggest that treating physicians should automatically be presumed to be

of Dr. Blue's credibility was thus the primary consideration on remand. The ALJ as factfinder found, based on Dr. Blue's treatment notes, that Dr. Blue's opinion was "the most credible evidence in the record regarding the cause of [Groves's] death." J.A. at 19.[8]

Peabody now asks us to reach the opposite conclusion, arguing that the facts do not support Dr. Blue's opinion. Such a determination, however, would require us to address Dr. Blue's credibility, which would exceed our limited scope of review over the Board's decisions. We may reverse the ALJ's conclusion only if it is not supported by substantial evidence. Accepting the ALJ's determination of Dr. Blue's credibility, we observe that Dr. Blue attributed Groves's heart disease, which caused Groves's death, largely to "lung disease secondary to pneumoconiosis and a lack of oxygenation." J.A. at 60. Dr. Blue's treatment notes, which indicate that Groves had pulmonary problems, thus provide adequate evidence to support the ALJ's conclusion that Groves's death was hastened in some way by pneumoconiosis. We recognize that the record may permit an alternative conclusion, but we also respect and defer to the ALJ's authority in the finding of facts.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the Board's order.

---

[8]As the ALJ noted on remand, pneumoconiosis need not be the immediate or proximate cause of death. Therefore, the fact that Groves suffered from heart disease and other medical problems does not affect the import of Dr. Blue's conclusion that pneumoconiosis compromised the function of Groves's lungs and thereby hastened his death.

It is thus abundantly clear that the ALJ did not give presumptive weight to the opinions of Groves's treating physicians. The ALJ did accord more weight to these opinions than to those of the consultants for the DOL and Peabody, but he examined all of the opinions on their merits and made reasoned judgments about the physicians' credibility. He also reviewed Groves's medical records. We thus conclude that the ALJ did not apply an automatic preference for or presumption in favor of Groves's treating physicians.

**B.  Substantial Evidence**

Peabody argues that the ALJ's decision to rely on the opinions of Groves's treating physicians was irrational because the opinions did not constitute substantial evidence. This argument is based on the following facts:  1) Drs. Blue and Johnson's finding of pneumoconiosis was "not confirmed by better qualified readers" and should have confuted their credibility because it "was at odds with the ALJ's finding that the x-rays did not establish the disease," 2) Dr. Johnson relied on a pulmonary function study that was invalidated on expert review, 3) Drs. Blue and Johnson failed to mention Groves's smoking history, and 4) Dr. Blue's opinion on the cause of Groves's death was "conclusory, gratuitous and supported by no valid medical data or identified observations." Petitioner's Br. at 34-36.

Peabody cites *Director, OWCP v. Rowe*, 710 F.2d 251 (6th Cir. 1983), and contends that the opinions of Groves's treating physicians were not credible. However, the *Rowe* court expressly observed that the ALJ as factfinder should decide whether a physician's report is "sufficiently documented and reasoned," because such a determination is "essentially a credibility matter." *Id.* at 255. Lacking the authority to make credibility determinations, we will defer to the ALJ's findings. In fact, the Board remanded the case to the ALJ after he denied Wilma's claim because the ALJ had "not specifically address[ed Dr. Blue's treatment notes] in making his credibility determination." J.A. at 24. The issue

correct — we indicated that their opinions should be "properly credited and weighed." *Id.* Indeed, Peabody concedes as much:  "In post-1994 unpublished decisions, however, this Court almost uniformly has recognized that notwithstanding *Tussey*, ALJs are not *required* to credit treating doctors' opinions either standing alone or where there is conflicting proof in the record." Petitioner's Br. at 29.[5] We therefore conclude that Peabody's "treating physician presumption" argument lacks merit and disagree with its characterization of the *Tussey* decision as ambiguous or in conflict with the established caselaw.

*Tussey* requires ALJs in black lung cases to examine the medical opinions of treating physicians on their merits and to make a reasoned judgment about their credibility. These opinions should be "[g]iven their proper deference." *Tussey*, 982 F.2d at 1042. In determining the level of deference that would be proper, we turn to 20 C.F.R. § 718.104(d)(5), which delineates the criteria for the development of medical evidence in black lung proceedings:

> In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

---

[5] We observe that the unpublished decisions that Peabody cites in its brief do not support its position. *See, e.g.*, *Arch of Kentucky, Inc. v. Hickman*, No. 98-3421, 1999 WL 646283, at *4 (6th Cir. Aug. 13, 1999) ("Although the diagnoses of treating physicians are not entitled to conclusive weight or even a presumption in favor of the Claimant, courts have noted that their opinions deserve 'special consideration.'" (citation omitted)).

*Id.* Given this standard, Peabody's interpretation of the ALJ's decision and order in this case is not tenable. In particular, we observe that the ALJ initially *denied* Wilma's claim, finding that Wilma had failed to establish that pneumoconiosis hastened her husband's death.[6] After the Board vacated this finding and remanded the case for further findings with respect to the medical opinion evidence, the ALJ found that Wilma was entitled to survivor's benefits. In his decision and order on remand, the ALJ reviewed Groves's medical records as compiled by his treating physicians and the consultative reports issued by a DOL expert and two Peabody experts. The ALJ discounted the opinion of the DOL expert, who had reviewed a limited amount of the available evidence, as "not well-reasoned." J.A. at 18. The ALJ also accorded less weight to the opinions of Drs. Branscomb and Fino and noted that "[n]either physician ever personally examined" Groves. J.A. at 18. In addition, the ALJ found that the opinions of these two consultants were "less credible" because they did not make a finding of pneumoconiosis, unlike the physicians who had actually examined Groves. J.A. at 18.

---

[6]In finding that Groves had suffered from pneumoconiosis, which Peabody's experts disputed, the ALJ stated:
> I give the most weight to the opinions of Drs. Johnson and Blue, as buttressed by the opinions of [four other physicians] and several of [Groves's] hospital records. Drs. Blue and Johnson were [Groves's] treating physicians. More weight may be accorded to the conclusions of a treating physician as he is more likely to be familiar with the Miner's condition than a physician who examines him episodically. . . . [A] comparison of medical reports and tests over a long period of time may conceivably provide a physician with a better perspective than th[at of] a non-treating physician. . . . It is proper to accord less weight to a consulting or non-examining physician[] on the ground that he does not have first-hand knowledge of the miner's condition.

J.A. at 37-38 (citations omitted). However, in finding that the evidence was insufficient to establish death due to pneumoconiosis, the ALJ concluded that Dr. Blue's opinion, which he characterized as "not well-documented," was "outweighed by the well-reasoned and well-documented opinions of Drs. Branscomb and Fino." J.A. at 38. The ALJ thus did not apply a treating physician presumption in his initial denial of Wilma's claim.

The ALJ gave "the most weight" to Groves's treating physicians:

> Their progress reports establish that they treated [Groves] for nearly twenty-five years. [Groves] had problems with his breathing during this time and was diagnos[ed] with, among other things, chronic obstructive pulmonary disease, bronchitis, acute bronchitis, and coal workers' pneumoconiosis. These treatment notes, which show that [Groves's] lung function was impaired, support Dr. Blue's letter of February 2, 1996, and bolster his credibility. . . . Therefore, I find Dr. Blue's letter and treatment notes are persuasive in establishing that [Groves's] death was hastened by pneumoconiosis.

J.A. at 18-19. On appeal, the Board affirmed the ALJ's finding that Wilma had established that her husband's death was due to pneumoconiosis. Specifically, the Board concluded that the ALJ's decision to accord greater weight to Dr. Blue's opinion was rational because Dr. Blue had treated Groves for many years. The Board also noted that the ALJ had not abused his discretion in according less weight to the opinions of Peabody's experts, who had never examined or treated Groves and had "ruled out the existence of pneumoconiosis in [Groves], when in fact the presence of the disease had been established." J.A. at 11.[7]

---

[7]The OWCP argues that the ALJ's "summary dismissal of the opinions of Drs. Fino and Branscomb for lack of personal examination was simply wrong." Respondent (OWCP)'s Br. at 32-33. However, the ALJ had two reasons for giving less weight to the opinions of Peabody's experts: 1) neither physician had personally examined Groves and 2) their opinions about Groves's cause of death were less credible because they had failed to find any evidence of pneumoconiosis in the first place.

The Board acknowledged in Peabody's second appeal that "Dr. Branscomb concluded that, while [Groves] did not suffer from pneumoconiosis, even if he had the disease it would not have hastened his death." J.A. at 11 n.2. However, it affirmed the ALJ's decision, noting that Dr. Fino had ruled out the existence of pneumoconiosis.