**Vivian D. CREIGHTON, Petitioner,**

v.

**BEE COAL COMPANY; Three X Coal Company; and Director, Office of Workers Compensation Programs, United States Department of Labor, Respondents.**

No. 00–4591.

United States Court of Appeals, Sixth Circuit.

April 9, 2002.

Before MARTIN, Chief Circuit Judge, and BOGGS, and DAUGHTREY, Circuit Judges.

ON PETITION FOR REVIEW
FROM THE BENEFITS
REVIEW BOARD

PER CURIAM.

The petitioner, Vivian D. Creighton, is the surviving spouse of Lowell Creighton, now deceased, who was employed as a coal miner for just over ten years of his working life. She asks us to review the decision of the Benefits Review Board affirming the order of an administrative law judge that denied her claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. Because the administrative law judge's findings and conclusions were supported by substantial evidence, and because his decision not to reopen the record for additional evidence upon remand from the Benefits Review Board was within his discretion, we must deny the petition for review.

*FACTUAL AND PROCEDURAL BACKGROUND*

Lowell Creighton died on August 21, 1994, at the age of 61. Four years prior to his death, he was awarded benefits under the Black Lung Benefits Act upon a finding by an administrative law judge that he was disabled by pneumoconiosis. After her husband's death, Vivian Creighton filed a claim for survivor's benefits that was denied by a district director with the

Department of Labor. She then requested and received a formal hearing before an administrative law judge.

Under the governing regulations and precedent, the primary issue to be resolved at the hearing was "[w]hether the deceased miner died due to pneumoconiosis, or pneumoconiosis was a substantially contributing factor, or cause, leading to the miner's death, or that pneumoconiosis hastened his death." Vivian Creighton's primary evidence in support of her application for benefits consisted of brief reports from two physicians who had treated her husband in the past, at some time prior to the onset of his last illness. The first was a two-paragraph report prepared on March 2, 1995, by Dr. Glen R. Baker. The report, which contained no information about when Dr. Baker evaluated Lowell Creighton, read in its entirety as follows:

> Mr. Creighton is a gentleman I saw for evaluation of possible lung disease secondary to his employment in the coal mining industry. Physical examination, chest x-ray, pulmonary function testing and arterial blood gas studies substantiated a diagnosis of coal workers' pneumoconiosis, category 1/0, a servere obstructive ventilatory defect, mild resting hypoxemia with moderately severe hypercarbia and respiratory acidosis.
>
> It is my opinion that the presence of pneumoconiosis lowered his overall functional state hastening his death.

In addition, the petitioner also submitted a report from Dr. Abdi Vaezy that was even more terse than that of Dr. Baker. The Vaezy report read in its entirety as follows:

> This is to certify that Mr. Lowell Creighton was referred to m[e] by Dr. Lawrence MaGuire for follow-up and evaluation of a hilar mass. He had also been diagnosed previously by my associate, Dr. Glen Baker, to have coal work-

ers' pneumoconiosis which would have attributed [sic] to his deterioration and final demise.

For his part, the Director submitted the report of Dr. S.S. Kraman, who was not one of Lowell Creighton's treating physicians. Unlike Drs. Vaezy and Baker, Dr. Kraman concluded that pneumoconiosis did not contribute to Lowell Creighton's death. In substance, his report read as follows:

> I have reviewed all the submitted evidence regarding Mr. Creighton.
>
> The preponderance of the evidence indicates that this miner died of lung cancer which was an acute condition. Lung cancer is a disease of the general public and there is no evidence that it is related to coal mine employment. Rather, the cause of almost all cases of lung cancer is cigarette smoking and I believe that smoking was the cause of cancer and death in this miner. Pneumoconiosis did not contribute to his death.

Dr. Kraman did not specify what he meant by "all the submitted evidence."

Initially, Administrative Law Judge Paul Teitler ruled in favor of the petitioner, relying on the reports of Drs. Baker and Vaezy. However, the Director appealed this order to the Benefits Review Board, contending that the evidence was insufficient to support a finding under 20 C.F.R. § 718.205(c) that the miner's death had been caused by pneumoconiosis. The Board concluded that the order was deficient under the Administrative Procedures Act in that it lacked an explanation for concluding that "the one-sentence conclusions rendered by Drs. Baker and Vaezy [were] sufficiently reasoned." In addition, the Board determined that the administrative law judge erred in crediting the opinions of Drs. Baker and Vaezy over Dr. Kraman on the grounds that the former

had "excellent credentials," given that Dr. Kraman, like Dr. Vaezy, was board-certified in internal medicine and pulmonary disease, while there was no evidence that Dr. Baker had any board certification. Accordingly, the Board vacated Judge Teitler's order and remanded the case "for further consideration."

Prior to the filing of the second ruling from the ALJ, the petitioner submitted new reports from Dr. Baker and Dr. Vaezy. The Director objected to the admission of the new reports as untimely, and Judge Teitler sustained the Director's objection, on the ground that the order of remand did not authorize him to reopen the record for the introduction of additional evidence. A second motion to reopen was also denied as "untimely."

In his subsequent decision, Judge Teitler concluded that, in light of the regulatory standard and applicable burden of proof, the evidence was insufficient to award survivor's benefits:

> Of import to the issue at hand are the reports of Drs. Vaezy, Baker and Kraman. The death certificate, as noted in the prior Decision, makes no reference to coal worker's pneumoconiosis. It lists the cause of death as carcinoma. (DX 6). Medical records immediately preceding the miner's death also make no mention of coal worker's pneumoconiosis, focusing primarily on the miner's cancer and its complications. (DX 8, 9, 19). Thus, the miner's treating physicians, Dr. Scott Black and Dr. Ma[g]uire diagnose lung cancer, Dr. Black reiterating that the miner was a heavy smoker. Dr. Glen Baker submitted a report dated March 2, 1995. (DX 19). . . . It was his opinion that the pneumoconiosis lowered the miner's "overall functional state hastening his death."

> In a report dated March 2, 1995, Dr. Abdi Vaezy stated that the miner was referred to him by Dr. Ma[g]uire for follow-up and evaluation of a hilar mass. (DX 19). According to Dr. Vaezy, the miner "had also been diagnosed previously" by Dr. Baker, "to have coal worker's pneumoconiosis which would have attributed [sic] to his deterioration and final demise."

> By report dated April 19, 1995, Dr. S. Kraman stated that he had reviewed all the submitted medical evidence regarding the miner. (DX 39) The preponderance of the evidence indicated that the miner died of lung cancer which was an acute condition. Pneumoconiosis did not contribute to his death.

> As the Board noted, Drs. Kraman and Vaezy are Board certified in internal medicine and pulmonary disease, while Dr. Baker's Board certification, if any, is not known. Upon reviewing the medical reports, I do not find them sufficient to establish that death was contributed to by, or the result of complications of pneumoconiosis. Dr. Baker's report is more thorough than that of Dr. Vaezy, however, he does not explain how the miner's pneumoconiosis lowered the miner's overall functioning state. He also does not indicate when he last examined the miner, and if he did, indeed see the miner immediately prior to death. There is no indication that Dr. Baker reviewed the hospitalization records concerning the miner's final hospitalizations prior to death. Indeed, his report makes no mention as to when he last examined the miner, and presumable [sic], this could have been in 1990, when he examined the miner during the pendency of his application for benefits. The hospital records most certainly are probative as to the issue of the immediate cause of death, and the failure to acknowledge a review of those prior to rendering an opinion as to the cause of

death, as well as a lack of any indication of any examination of the miner shortly before his death, renders Dr. Baker's opinion worthy of little, if any weight on the issue of cause of death.

Dr. Vaezy's medical opinion fails for the same reason, as well as for the fact that his opinion is even more cursory. It appears to rely solely upon the fact that Dr. Baker found pneumoconiosis to opine that it contributed to his death. There is no explanation for this conclusion, no indication of when Dr. Vaezy examined the miner, or what led to the conclusion regarding the role pneumoconiosis played in the miner's death. I find his opinion to be unreasoned and worthy of little weight.

As there is no other medical opinion evidence of record which finds that death was in any way contributed to by pneumoconiosis, the evidence is clearly insufficient to establish death due to pneumoconiosis pursuant to 20 C.F.R. § 718.205(c). Claimant carries the general burden of establishing entitlement to benefits and the initial burden of going forward with the evidence. *Young v. Barnes & Tucker Co.*, 11 BLR 1–117 (199/88). It is this burden which Claimant has failed to meet. Therefore, based on the evidence of record, I find Claimant failed to establish the miner died due to pneumoconiosis within 20 C.F.R. § 718.205(c) and, accordingly, she is not entitled to benefits.

The petitioner appealed the order refusing to admit additional evidence and denying her application for survivor's benefits to the Benefits Review Board, which rejected her appeal and affirmed Judge Teitler's decision in all respects. The Board found that the ruling was within the judge's discretion and that he "acted rationally in finding the Director's objections persuasive and in refusing to admit claimant's evidence." Likewise, the Board found no error in the judge's conclusion that the evidence was insufficient to establish Vivian Creighton's entitlement to benefits. She now seeks to overturn that ruling.

## DISCUSSION

Our review of the Board's decision in a case arising under the Black Lung Benefits Act is limited to determining whether the Board has committed a legal error or exceeded its scope of review of the administrative law judge's determination. *See Tennessee Consol. Coal Co. v. Kirk,* 264 F.3d 602, 606 (6th Cir.2001). We may not reweigh the evidence or substitute our judgment for that of the administrative law judge. *See id.* Instead, our review is confined to determining whether the administrative law judge's conclusions are supported by substantial evidence and are in accordance with applicable law. *See id.* "Thus, as long as the ALJ's conclusions are supported by the evidence, they will not be reversed, 'even if the facts permit an alternative conclusion.'" *Id.* (quoting *Youghiogheny & Ohio Coal Co. v. Webb,* 49 F.3d 244, 246 (6th Cir.1995)).

The federal regulations allow for black lung benefits to the survivor of a "miner whose death was due to pneumoconiosis." 20 C.F.R. § 718.205(a). A survivor claiming benefits "must prove," among other things, that "[t]he miner's death was due to pneumoconiosis." 20 C.F.R. § 718.205(a)(3). This requirement is met under the following conditions:

(1) Where competent medical evidence establishes that pneumoconiosis was the cause of the miner's death, or

(2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, or

(3) Where the presumption set forth at § 718.304 is applicable.

20 C.F.R. § 718.205(c)(1),(2),(3). The regulations further provide:

(4) However, survivors are not eligible for benefits where the miner's death was caused by a traumatic injury or the principal cause of death was a medical condition not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.

(5) Pneumoconiosis is a "substantially contributing cause" of a miner's death if it hastens the miner's death.

20 C.F.R. § 718.205(c)(4),(5). Subsection (c)(5) codifies this court's decision in *Brown v. Rock Creek Mining Co.*, 996 F.2d 812, 816 (6th Cir.1993) (holding that "the regulatory language 'substantially contributing cause' encompasses the situation where pneumoconiosis actually hastens a miner's death").

■ Although the petitioner concedes that her husband's "primary cause of death was cancer," she argues that the administrative law judge erred in concluding that she had failed to prove that pneumoconiosis hastened his death. In making this argument, the petitioner notes repeatedly that Drs. Baker and Vaezy, upon whose opinions she relies, were her husband's "treating physicians." While it is generally true that "the opinions of treating physicians are entitled to greater weight than those of non-treating physicians," *Tussey v. Island Creek Coal Co.*, 982 F.2d 1036, 1042 (6th Cir.1993), the administrative law judge need not defer to the opinion of a treating physician if it is insufficiently documented or reasoned, *see Peabody Coal Co. v. Groves*, 277 F.3d 829, 834 (6th Cir.2002) (observing that "treating physicians should [not] automatically be presumed to be correct," but that "their opinions should be 'properly credited and

weighed'") (quoting *Tussey*, 982 F.2d at 1042). *See also, e.g., Lango v. Dir., Office of Workers' Comp. Programs*, 104 F.3d 573, 577 (3d Cir.1997) (finding no error in administrative law judge's rejection of treating physician's conclusory statement that miner's death was hastened by pneumoconiosis and noting that "[t]he mere statement of a conclusion by a physician, without any explanation of the basis for that statement, does not take the place of the required reasoning").

Here, there is no indication that Drs. Baker and Vaezy treated the miner at the time of his last illness and death. Moreover, as the administrative law judge correctly found, their opinions regarding whether pneumoconiosis contributed to Lowell Creighton's death were neither well-supported nor adequately reasoned. The reports of both doctors suffer from the same critical flaw—neither makes a reasoned connection between the undisputed evidence that Lowell Creighton suffered from pneumoconiosis and the key issue to be resolved by the administrative law judge—whether pneumoconiosis contributed to his death. In fact, there appears nothing in the record to indicate that Dr. Baker or Dr. Vaezy reviewed evidence relating to the cause of death. Although it appears Dr. Vaezy may have treated Lowell Creighton at some point during the year prior to his death, the record shows that Dr. Baker last treated him in 1990, four years before he died.

Moreover, neither Dr. Baker nor Dr. Vaezy included in his report any reference to the hospital records generated by Dr. Maguire and Dr. Black, the two treating physicians who treated Lowell Creighton in the weeks immediately prior to his death. The administrative law judge found it significant that those records do not identify pneumoconiosis as contributing to his worsening condition. Rather,

the records evidence the progression of his "wide spread metastatic lung cancer." The death certificate, signed by the county coroner, attributes the "immediate cause" of death to cancer of the lungs and brain. It makes no reference to pneumoconiosis. In view of all this, and given that the only medical opinion evidence that pneumoconiosis contributed to Lowell Creighton's death was that of Drs. Baker and Vaezy, the administrative law judge's conclusion that the petitioner had not met her burden of proof was clearly supported by substantial evidence.

■■■ Finally, Vivian Creighton challenges the administrative law judge's decision disallowing her to supplement the record with additional medical reports upon remand.[1] The regulations require the administrative law judge to provide "an opportunity for a fair hearing," 20 C.F.R. § 725.455(c), but vest in the hearing officer "considerable discretion in conducting that hearing." Under the circumstances presented here, the refusal to reopen the record after remand was not an abuse of discretion. The petitioner provided no explanation to the administrative law judge below or to this court on appeal for her failure to provide the supplemental medical reports of Drs. Baker and Vaezy in a timely fashion. The supplemental reports, like the timely-filed initial reports that were admitted into evidence, were prepared long after Lowell Creighton's death and contained no information that could not have been developed prior to the hearing.[2]

## CONCLUSION

The burden of proof in a survivor's action for benefits under the Black Lung Benefits Act rests with the claimant. Thus, it was Vivian Creighton's obligation to show that her husband's death was hastened by pneumoconiosis. The administrative law judge's finding that the opinions of Drs. Baker and Vaezy were entitled to little or no weight and his ultimate

---

1. The petition also challenges the Board's decision vacating Judge Teitler's initial order awarding benefits and remanding for further consideration. That decision, however, is not reviewable. *See Bartley v. L & M Coal Co.,* 901 F.2d 1311, 1313 (6th Cir.1990)("Because a Board order that remands a case to an ALJ for further findings is not reviewable as a final order, we have no authority to review the ALJ's first resolution of the petitioner's claim.")

2. It should be noted that even had the administrative law judge considered the substance of the supplemental reports, the disposition of the case on the merits would almost certainly have been the same. Dr. Baker's supplemental report, dated December 29, 1998, confirms that the last time he treated Lowell Creighton was in 1990, four years prior to his death. His report concludes that Creighton "died from lung cancer and his complications with brain metastasis," and that "[h]is death may have been hastened somewhat by his obstructive airway disease related to both his cigarette smoking and his coal dust exposure, but it was not caused by his pneumoconiosis."

Dr. Vaezy's supplemental report does not indicate when Dr. Vaezy last treated Creighton, and provides the following conclusion:

> To re-phrase my previous statement, my feeling at that time, and again today is that he died of lung cancer and severe COPD. His 'black lung' based on the x-ray and record of Dr. Baker was a State 1/0 that has minimal bearing on pulmonary dysfunction; however it, possibly attributed [sic] to his deterioration and final demise.

If anything, the supplemental reports are more equivocal—but not necessarily better *reasoned*—with regard to the pertinent issue of whether Lowell Creighton's death was hastened by black lung disease than the evidence admitted at the hearing. Accordingly, the administrative law judge was not required to credit them. *See Griffith v. Dir., Office of Workers' Comp. Programs,* 49 F.3d 184, 186–87 (6th Cir.1995)(holding that administrative law judge did not err in discrediting equivocal opinion of treating physician regarding etiology of miner's lung disease).

conclusion that the petitioner had not met her burden of proof were supported by substantial evidence. Moreover, the administrative law judge's decision not to admit additional evidence upon remand was within the judge's discretion. Accordingly, we DENY the petition for review of the Benefits Review Board.