**GLEN COAL COMPANY and Old Republic Insurance Company, Petitioners–Appellants,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; United States Department of Labor; and Jess Seals, Respondents–Appellees.**

Nos. 01–4014, 02–3195.

United States Court of Appeals, Sixth Circuit.

Oct. 15, 2003.

Laura Metcoff Klaus, Mark E. Solomons, Greenberg & Traurig, Washington, DC, for Petitioners.

Christian P. Barber, Sarah M. Hurley, U.S. Department of Labor, Washington, DC, for Respondent.

Before BOGGS, MOORE, and GIBBONS, Circuit Judges.

## REVISED OPINION

GIBBONS, Circuit Judge.

Glen Coal Company and its insurer, Old Republic Insurance Company, (collectively "Glen Coal") appeal an order of the United States Department of Labor Benefits Review Board ("Board") awarding reimbursement to Jess Seals, a former coal miner, for medical benefits under Part C of the Black Lung Benefits Act, 30 U.S.C. §§ 901–945. After a previous appeal to this court, an administrative law judge determined on remand that Seals's disputed medical treatment was related to his coal workers' pneumoconiosis, and the Board affirmed. Glen Coal argues in this appeal that the administrative decisions below improperly eased Seals's burden of proving that his medical treatments were related to his pneumoconiosis, improperly weighed the opinion of Seals's treating physician, and improperly applied a revised regulation to the case. For the following reasons, we affirm.

### I.

The Black Lung Benefits Act is intended to "provide benefits . . . to coal miners who

are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a); *Glen Coal Co. v. Seals,* 147 F.3d 502, 505 (6th Cir.1998) (Boggs, J. concurring and Moore, J., concurring and dissenting) (*"Seals I"*). Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).

As explained in the previous appeal to this court, Part B of the Black Lung Benefits Act, 30 U.S.C. §§ 921–925, establishes a federally funded program providing monthly disability payments benefits to claimants, but no health care benefits. *Seals I,* 147 F.3d at 505. Part B claims are administered by the Social Security Administration. They are paid by the federal government and do not involve the mine operators or the Department of Labor ("DOL"). *Id.*

By contrast, Part C of the Black Lung Benefits Act "establishes an employer-funded federal workers compensation program to provide benefits, in cooperation with the states, for total disability or death due to pneumoconiosis, and is administered by the DOL." *Id.* (citing 30 U.S.C. §§ 931–945). That is, Part C benefits are industry-funded liabilities, payable either by a coal mine operator (or its insurer) who employed the miner or, where there is no liable operator, by the Black Lung Disability Trust Fund, which is funded by an excise tax on mined coal. 30 U.S.C. § 932(c); 26 U.S.C. § 9501(d). While Part B benefits provide a monthly disability payment, Part C benefits provide payment for medical treatment related to pneumoconiosis. Part C benefits are governed by 20 C.F.R. §§ 725.701–725.707. As explained in *Seals I,* obtaining Part C benefits is a two-step process. The first step determines whether the miner is totally disabled from pneumoconiosis such that the employer is liable for Part C benefits; the second step determines whether the employer is liable for individual medical expenses by determining whether the treatment in question is related to pneumoconiosis. *Seals I,* 147 F.3d at 505–06.

Seals worked as a coal miner for approximately seventeen years and stopped working in 1972, following a back injury. *Id.* at 506. Within a year of stopping work, Seals was awarded Part B benefits from the Social Security Administration. On June 27, 1979, Seals filed a claim for health benefits under Part C of the Act, the benefits at issue in this appeal. The DOL identified Glen Coal, Seals's former coal mine employer, as the responsible operator potentially liable for the payment of Part C medical benefits and so notified Glen Coal in 1984. Glen Coal "agreed without further proceedings to pay the cost of black lung related health care provided to Seals." *Id.* On May 29, 1984, Glen Coal signed an Agreement to Pay Medical Benefits, which stated that Seals "meets the standards of total disability[1]

---

**1.** Under the Black Lung Benefits Act, a claimant is considered totally disabled "when pneumoconiosis prevents him or her from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity and over a substantial period of time." 30 U.S.C. § 902(f)(1)(A); *Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 577 (6th Cir.2000). The regulations provide that a claimant is "totally disabled due to pneumoconiosis" if the claimant "has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner [f]rom performing his or her usual coal mine work" and from engaging in comparable coal mining work in his area, and pneumoconiosis is a "substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(b), (c). Pneumoconiosis is a "substantially contributing

under the Black Lung Benefits Act (30 U.S.C. § 901 *et seq.*).''

The agreement signed by Glen Coal also stated:

> The coal mine operator understands that this document may be the basis for the issuance of an Award of Medical Benefits and order to Pay Medical Benefits in this claim.
>
> The above-named coal operator agrees to pay medical benefits to the claimant/miner for reasonable medical charges directly resulting from treatment of the miner's coal worker's pneumoconiosis ...

Based on this agreement, the DOL awarded Part C medical benefits to Seals in June 1984, ordering Glen Coal to "provide to the claimant all reasonable and necessary medical benefits required for the treatment of his pneumoconiosis condition ... in accordance with ... the [Black Lung Benefits] Act."

In 1985, Seals submitted pharmacy bills totaling approximately $1,900 for bronchodilators,[2] antibiotics, and doctor visits. Glen Coal refused to pay them, stating in letters to the pharmacist that Seals had no or very mild pneumoconiosis and that there was no evidence that the treatment was for a condition related to pneumoconiosis. *Seals I*, 147 F.3d at 507. Seals submitted the bills to the DOL for review and its medical consultant, Dr. Leon Cander, recommended that Glen Coal should pay for the bronchodilator treatments, but not the antibiotics. On August 10, 1988, the DOL adopted that recommendation and ordered Glen Coal to pay for Seals's

bronchodilator treatment only. *Id.* Glen Coal refused, arguing that the record contained no justification for bronchodilator therapy and that Seals's most recent x-ray had been negative for pneumoconiosis. *Id.* The DOL forwarded the case to the Office of Administrative Law Judges on May 18, 1989.

Administrative Law Judge (ALJ) Clement J. Kichuk heard the case on November 6, 1991. Glen Coal submitted the opinion of Dr. Abdulkader Dahhan, who had examined Seals and reviewed his medical records, and Dr. Ben V. Branscomb, who had also reviewed Seals's medical records. Seals submitted the opinion of his treating physician, Dr. G.S. Kanwal. The DOL submitted the opinion of Dr. Bernard P. McQuillan, who reviewed the bills from two of Seals's doctor visits.

On June 2, 1992, the ALJ issued a decision ordering Glen Coal to pay for both the bronchodilators and the antibiotics. Because Glen Coal had already conceded in 1984 that Seals was totally disabled by pneumoconiosis and that it was liable to pay for the treatment of Seals's pneumoconiosis, the only issue for adjudication was whether Seals had established that the contested medial bills were for treatment related to his pneumoconiosis and ancillary pulmonary conditions and disability. *See* 33 U.S.C. § 907(a); 20 C.F.R. § 725.701(b). The ALJ's decision applied a presumption articulated by the Fourth Circuit[3] that "[s]ince most pulmonary disorders are going to be related to or at least aggravated by the presence of pneumoconiosis, when a miner receives treat-

---

cause'' of the miner's disability if it "[h]as a material adverse effect on the miner's respiratory or pulmonary condition" or "[m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c)(1).

2. Bronchodilators are drugs used to cause relaxation of the bronchial muscle in order to expand the air passages of the bronchi. *Seals I*, 147 F.3d at 507 n. 4.

3. Because Seals was living in Virginia at the time, the ALJ apparently assumed that Fourth Circuit law applied.

ment for a pulmonary disorder, a presumption arises that the disorder was caused or at least aggravated by the miner's pneumoconiosis, making the employer liable for the medical costs." *Doris Coal Co. v. Director, OWCP*, 938 F.2d 492, 496–97 (4th Cir.1991). The ALJ found that Glen Coal's evidence was insufficient to rebut the *Doris Coal* presumption and ordered Glen Coal to pay the disputed bills.

Glen Coal appealed the ALJ's 1992 decision. The Board affirmed, finding that the ALJ's decision was supported by substantial evidence and there was no reversible error. Further, the Board held that the ALJ properly applied the *Doris Coal* presumption and upheld all the ALJ's factual findings with respect to the four doctors' reports.

After the Board affirmed, Glen Coal appealed.[4] This court vacated the Board's decision, holding that the judicially-created *Doris Coal* presumption was inconsistent with the law of the Sixth Circuit. Specifically, this court held that the *Doris Coal* presumption "runs afoul of the purposes of the Black Lung Benefits Act." *Seals I*, 147 F.3d at 504. The court cited *Director, OWCP Department of Labor v. Greenwich Collieries [Ondecko]*, 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994), in which the Supreme Court stated that the Administrative Procedures Act ("APA") is designed to introduce greater uniformity of procedure among the diverse agencies and that the desired uniformity would be compromised if each agency were free to create presumptions that would reallocate the burdens of proof. *Id.* at 513. The *Seals I* majority held that the *Doris Coal* presumption does not violate § 7(c) of the APA (which states that the burden of proof is on the proponent of a rule or order), because it merely reallocates the

burden of production rather than the burden of proof, but that it does conflict with *Greenwich Collieries*. *Id.* The court explained:

> If we were to [allow the *Doris Coal* presumption], then the door will be opened to the creation of other judicial presumptions in this Circuit and thereby destroy the desired uniformity of application of the Black Lung Benefits Act. The claimants in one district might have a harder time proving their entitlement to benefits than the claimants in another district, which would run afoul of the desired uniformity of the Act.

*Id.* The majority therefore held that the *Doris Coal* presumption does not apply in the Sixth Circuit. Rather, in a dispute such as Seals's (in which the claimant has established that he is totally disabled due to pneumoconiosis), the claimant bears the burden of proving by a preponderance of the evidence that the disputed treatment is related to pneumoconiosis. *Id.* at 514. The claimant also bears the burden of production to offer evidence that the treatment is related to his pneumoconiosis. *Id.* Further, "[t]he [coal mine] operator can offer evidence that the bills are not related to pneumoconiosis, but the operator cannot offer evidence controverting the miner's pneumoconiosis at this second stage because the determination of whether he has pneumoconiosis is made at the first stage." *Id.* That is, the employer is precluded from arguing that the disease is not present or that it is not totally disabling. The *Seals I* court remanded the case to the ALJ for adjudication under the standard it articulated.

On remand, the ALJ applied *Seals I*, placing the burden of proof on the claimant to prove by a preponderance of the

---

4. Glen Coal initially appealed to the Fourth Circuit, which transferred the matter to the Sixth Circuit upon learning that Seals's coal mine work had occurred in Kentucky. *Seals I*, 147 F.3d at 509.

evidence that the treatment he received was related to his totally disabling pneumoconiosis. The ALJ found that Seals met his burden:

> The Sixth Circuit standard demands Claimant to produce evidence that the treatment is related to his totally disabling pneumoconiosis. This Court finds and concludes that Claimant has produced sufficient evidence to establish that the treatment he received with bronchodilators and antibiotics was used for the treatment of his chronic obstructive pulmonary disease [COPD], which is associated with the Claimant's disabling legal pneumoconiosis. By applying the law to the unique facts in this case, I find it reasonable to infer and conclude such relationship does exist, based on substantial evidence in the record of this case.

The ALJ discounted the opinions of Glen Coal's experts, Drs. Dahhan and Branscomb, because he found that they failed to accept the stipulation that Seals was totally disabled due to pneumoconiosis. However, the ALJ found "substantial evidence in the record that the treatment in question was related to Claimant's pneumoconiosis," including x-ray evidence and the opinions of Drs. McQuillan, Cander, and Kanwal. Dr. Kanwal, Seals's treating physician, stated that pneumoconiosis and COPD [5] are related and one can aggravate the other. He had observed that the bronchodilators alleviated Seals's respiratory symptoms to some extent. Even if the treatment merely relieved pain or discomfort associated with the pneumoconiosis or related disabilities, the ALJ noted, it would be compensable under the Act. *See* 20 C.F.R. § 725.701(c). The ALJ found, relying on Dr. Kanwal's opinion, that "the Claimant's pneumoconiosis and COPD

were related to the extent that the treatment for one condition alleviates the other condition." Accordingly, the ALJ ordered Glen Coal to pay the disputed bills.

Glen Coal appealed, making two arguments: first, that the ALJ's weighing of the evidence effectively reapplied the *Doris Coal* presumption by favoring Seals's medical evidence over Glen Coal's, and second, that the ALJ erred in finding that Seals had established that his treatments were pneumoconiosis-related. The Board disagreed. It held that it was permissible for the ALJ to accord the greatest weight to the opinion of the treating physician, Dr. Kanwal. The Board also stated that it was permissible for the ALJ to accord less weight to the opinions of Drs. Dahhan and Branscomb because they failed to recognize that Seals had shown that he was totally disabled due to pneumoconiosis. It held that the ALJ "complied with the instructions set forth by the Sixth Circuit" and it affirmed the ALJ's decision.

Glen Coal timely moved for reconsideration. Shortly thereafter, the DOL altered its regulations in three ways relevant here. First, the DOL effectively adopted a *Doris Coal*-like presumption:

> (e) If a miner receives a medical service or supply . . . for any pulmonary disorder, there shall be a rebuttable presumption that the disorder is caused or aggravated by the miner's pneumoconiosis. The party liable for the payment of benefits may rebut the presumption by producing credible evidence that the medical service or supply provided was for a pulmonary disorder apart from those previously associated with the miner's disability, or was beyond that necessary to effectively treat a covered

5. " 'COPD' is an acronym for 'chronic obstructive pulmonary disease,' which includes asthma, chronic bronchitis, certain types of

emphysema and other conditions." *Seals I,* 147 F.3d at 509 n. 6.

disorder, or was not for a pulmonary disorder at all.

20 CFR § 725.701(e). Thus, the *Seals I* analysis was no longer applicable. Second, the DOL confirmed that an employer could not defeat a Part C claim by providing evidence that the claimant does not have pneumoconiosis. Third, the DOL confirmed that the opinion of the miner's treating physician may be entitled to "controlling weight":

> (f) Evidence that the miner does not have pneumoconiosis or is not totally disabled by pneumoconiosis arising out of coal mine employment is insufficient to defeat a request for coverage of any medical service or supply under this subpart. In determining whether the treatment is compensable, the opinion of the miner's treating physician may be entitled to controlling weight pursuant to [20 C.F.R.] § 718.104(d) ...

20 C.F.R. § 725.701(f). Section 718.104(d) provides factors to consider in evaluating the treating physician's opinion: the nature and duration of the physician-patient relationship and the frequency and extent of treatment. The revised regulations, effective January 21, 2001, applied to all pending cases. 20 C.F.R. § 725.2. Glen Coal had again argued in its motion for reconsideration that the ALJ had failed to follow the dictates of *Seals I*. The Board rejected that argument for a second time, holding that the record supported the award of benefits under the *Seals I* standard. Moreover, the Board noted, the revised regulation provided for a standard that was easier for Seals to meet. "Since claimant carried his burden of proof under the old law, a burden which is reduced by the revised regulation, the facts of the instant case do not support employer's argument that it is unduly prejudiced by application of the new law." Therefore, the Board reaffirmed its prior decision affirming the ALJ's order.

Glen Coal filed a second motion for reconsideration, and the Board summarily denied it on February 12, 2002. Glen Coal timely appealed.

## II.

"This court has a very narrow scope of review over decisions of the Benefits Review Board." *Seals I*, 147 F.3d at 510. Our review is "limited to a determination whether the outcome below is supported by substantial evidence and was reached in conformance with applicable law." *Id.* (quoting *York v. Benefits Review Bd.*, 819 F.2d 134, 136 (6th Cir.1987)). We must affirm the Board's decision if the Board has not committed any legal error or exceeded its scope of review of the ALJ's factual determinations. *Tennessee Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir.2001). The Board reviews the ALJ's findings of fact and conclusions of law and may set them aside "only if they are not supported by substantial evidence in the record considered as a whole or if they are not in accordance with law." *Director, OWCP, United States Dep't of Labor v. Quarto Mining Co.*, 901 F.2d 532, 536 (6th Cir.1990). Substantial evidence is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cross Mountain Coal, Inc. v. Ward* 93 F.3d 211, 215–16 (6th Cir.1996) (internal quotations and citations omitted). "In deciding whether the substantial evidence requirement is satisfied, we consider whether the administrative law judge adequately explained the reasons for crediting certain testimony and evidence over other evidence in the record in deciding either to award or deny benefits." *Wolf Creek Collieries v. Director, OWCP*, 298 F.3d 511, 519 (6th Cir.2002). However, "[w]e do not reweigh the evidence or substitute our judgment for that of the ALJ." *Id.* (quoting *Peabody Coal Co. v. Groves*, 277 F.3d

829, 833 (6th Cir.2002)). Thus, this court will not disturb the conclusions of an ALJ that are supported by substantial evidence, even if our conclusions would have been different under *de novo* review. *Id.*

## III.

Glen Coal first argues that the ALJ did not reconsider the evidence under the correct legal standard ordered by this court. *Seals I* held that a claimant must establish by a preponderance of the evidence that his medical expenses were necessary to treat his pneumoconiosis and ancillary pulmonary conditions and disability. Glen Coal argues that, on remand, the ALJ simply ignored this holding and effectively reapplied the *Doris Coal* presumption. Glen Coal made the same argument to the Board, which rejected it. It concluded that the ALJ "complied with the instructions set forth by the Sixth Circuit in that he has considered all of the relevant evidence and has permissibly concluded that such evidence affirmatively demonstrates" that Seals's medical treatments were necessary to treat his pneumoconiosis and related conditions. Glen Coal's argument has two separate components: first, that the ALJ improperly weighed Glen Coal's medical evidence, and second, that the ALJ improperly credited Glen Coal's 1984 agreement to pay Seals's pneumoconiosis-related medical expenses. Neither argument is persuasive.

First, Glen Coal objects to the manner in which the ALJ weighed its medical evidence. It argues that "by disqualifying Glen's evidence as contrary to the prior award and the agreement to pay medical benefits, Seals's evidence becomes dispositive. It is easy to meet a burden of proof by a preponderance of the evidence when all contradictory evidence is incompetent." In spite of Glen Coal's assertions, however, the rule applied by the ALJ did not discount *all* contrary evi-

dence, but rather discounted only evidence offered to show that Seals does not suffer from pneumoconiosis. Glen Coal remained free to offer evidence showing that the specific treatments were not pneumoconiosis-related. As *Seals I* explained, "the Black Lung Benefits Act itself is set up to be a two-step process: the first stage determines entitlement and the second stage determines whether the particular medical bills are related to the entitlement." 147 F.3d at 513. In this case, the first stage was completed in 1984 when Glen Coal agreed that Seals is totally disabled by pneumoconiosis under the statute. *Id.* at 510–11 ("the parties agreed that Seals was totally disabled from pneumoconiosis and that Glen Coal was the responsible operator"). At the second stage, "[t]he operator can offer evidence that the bills are not related to pneumoconiosis, but the operator cannot offer evidence controverting the miner's pneumoconiosis ... because the determination of whether he has pneumoconiosis is made at the first stage." *Id.* at 514. The ALJ did not ignore this standard, but rather applied it explicitly. His decision states that "the determination of whether Claimant has pneumoconiosis is made at the first stage ... and cannot be controverted by the Employer at this second stage."

The ALJ discounted the opinions of Glen Coal's experts, Drs. Dahhan and Branscomb, because he found that they failed to accept Glen Coal's stipulation that Seals was totally disabled due to pneumoconiosis. Dr. Dahhan concluded that Seals suffered from only a mild lung impairment and, from a respiratory standpoint, was able to continue his previous coal mining employment. The ALJ gave "no weight" to this opinion, and his decision to do so was in accord with *Seals I*.

Although Dr. Branscomb's report did not completely discount the fact that Seals

had pneumoconiosis, the ALJ found that Dr. Branscomb did not accept that Seals's pneumoconiosis was totally disabling. The doctor's report stated, "It has already been determined that Mr. Seals has pneumoconiosis as defined under the law. Based on the medical records, with a high level of medical certainty, [Seals's] pneumoconiosis is either subradiographic or if one accepts the minority x-ray interpretation, minimal and atypical in its X-ray manifestations." Dr. Branscomb also stated that Seals "has a clear-cut and straightforward clinical disorder, namely chronic bronchitis" caused by cigarette smoking and that all of the disputed treatments "are for chronic bronchitis and not for the [coal workers' pneumoconiosis]." He stated that, "[h]ad [Seals] never been employed in coal mining[,] his symptomology and treatment requirements would be identical to those he has had." He added:

I am familiar with the controversial literature concerning whether certain types of bronchitic manifestations may be more common in coal miners, especially in working coal miners and particularly in Europe. These studies do not provide a reasonable basis for assuming that coal dust in any way contributed to the continuing pulmonary problems experienced by Mr. Seals.

Considering Dr. Branscomb's statement that Seals's pneumoconiosis was either "minimal" or "subradiographic," the ALJ said "[t]his statement indicates that Dr. Branscomb has serious doubt that Claimant suffers from clinical pneumoconiosis.... Nor does Dr. Branscomb refer at any time to the fact that it has been determined and that the Employer had agreed that the Claimant was totally disabled by statutory pneumoconiosis." As the ALJ had explained earlier in his decision, "Employer agreed that Claimant was totally disabled due to pneumoconiosis, as defined in the Act and regulations, and cannot, in this medical benefits proceeding, introduce evidence to establish that Claimant is not disabled due to pneumoconiosis ..." This statement of the law was in accord with *Seals I. See* 147 F.3d at 514. Glen Coal's stipulation amounted to a concession that Seals's pneumoconiosis due to coal dust exposure prevented him from continuing to engage in coal mining employment comparable to the coal mining work he had regularly performed. *See* 30 U.S.C. § 902(f)(1)(A). Dr. Branscomb, however, characterized Seals's pneumoconiosis as "minimal" and his report evidences a belief that Seals's "continuing pulmonary problems" are caused by bronchitis that is unrelated to his coal mining employment. Although the ALJ could have analyzed Dr. Branscomb's report differently, his conclusion is supported by substantial evidence. Limiting ourselves to the particular facts in this case, we hold that it was permissible for the ALJ to discount Dr. Branscomb's opinion that Seals's pneumoconiosis was "minimal" or "subradiographic" as inconsistent with Glen Coal's stipulation that Seals's pneumoconiosis was "totally disabling."

Further, the ALJ found that Dr. Branscomb's credibility was reduced because he failed to sufficiently explain his view that "there is no medically reasonable basis for assuming Seals's pneumoconiosis aggravated his COPD or vice versa." The ALJ's credibility determinations are entitled to deference. *Jericol Mining, Inc. v. Napier,* 301 F.3d 703, 713–14 (6th Cir.2002). In view of the "substantial evidence in the record that the treatment in question was related to [Seals's] pneumoconiosis," the ALJ "[did] not credit" Dr. Branscomb's opinion. We decline to disturb this determination on appeal.

█ In a related argument, Glen Coal objects to the ALJ's treatment of its 1984 agreement to pay Seals's pneumoconiosis-related medical costs, arguing that the

ALJ improperly applied issue preclusion. It asserts that its medical evidence was not inconsistent with its 1984 stipulation. The ALJ, the Board, and the *Seals I* panel all agreed that Glen Coal had conceded in 1984 that Seals was totally disabled by pneumoconiosis under the statute—that is, that Seals had legal pneumoconiosis. Glen Coal now contends that it conceded only Seals's clinical pneumoconiosis.

The term "pneumoconiosis" includes both medical, or "clinical" pneumoconiosis and statutory or "legal" pneumoconiosis. 20 C.F.R. § 718.201(a). "Clinical pneumoconiosis" includes "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment," including coal workers' pneumoconiosis. 20 C.F.R. § 718.201(a)(1). "Legal pneumoconiosis," on the other hand, "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). Thus, legal pneumoconiosis is a broader term. *See Cornett v. Benham Coal, Inc.,* 227 F.3d 569, 577 (6th Cir.2000) (noting that fibrosis is generally associated with medical pneumoconiosis, but is not a required element of the broader concept of legal pneumoconiosis). "Clinical pneumoconiosis refers to the lung disease caused by the fibrotic reaction of the lung tissue to inhaled dust." *Hobbs v. Clinchfield Coal Co.,* 917 F.2d 790, 791 n. 1 (4th Cir. 1990) (quotation omitted). Legal pneumoconiosis, however, is much broader and "refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.*

Glen Coal's 1984 Agreement to Pay Medical Benefits stated that Seals "meets the standard of total disability under the Black Lung Benefits Act (30 U.S.C. § 901 *et seq.*)" *Seals I,* 147 F.3d at 506. Glen Coal also agreed "to pay medical benefits to the claimant/miner for reasonable medical charges directly resulting from treatment of the miner's coal worker's pneumoconiosis." The ALJ found that Glen Coal had conceded clinical and legal pneumoconiosis. He stated that Glen Coal's "unconditional agreement effectively amounted to its conceding that Claimant's existing impairment from chronic obstructive pulmonary disease arose 'at least in part' out of coal mine employment." Further, Glen Coal "did not qualify or limit its 1984 agreement to clinical pneumoconiosis." The ALJ refers to Glen Coal's "unconditional agreement that Claimant suffers from disabling statutory pneumoconiosis." In short, the ALJ found that Glen Coal had conceded Seals's "legal" pneumoconiosis in 1984. The Board agreed, noting that the issue of whether Seals had shown totally disabling pneumoconiosis "is not before us at this time as the previous finding on this matter constitutes the law of the case." The *Seals I* court, similarly, noted that "the parties agreed that Seals was totally disabled from pneumoconiosis and that Glen Coal was the responsible operator." 147 F.3d at 510.

Glen Coal now contends that it is improper to hold it to its 1984 concession "because there was no evidence in the record that the issue was addressed in the SSA proceeding" and "Glen Coal did not have a full and fair opportunity to litigate the issue of 'legal' pneumoconiosis at the time." However, Glen Coal was free to contest the Social Security Administration finding that Seals was totally disabled, under the regulations. *Reich v. Youghiogheny and Ohio Coal Co.,* 66 F.3d 111, 114 (6th Cir.1995); 20 C.F.R. § 725.702(b)(2)

(the DOL "shall ... inform the responsible operator, if any, of the operator's right to contest the claimant's entitlement for medical benefits."); 20 CFR § 725.702(f) (Operators which may be required to provide medical treatment benefits to a miner "shall have the right to participate in the adjudication of the claim."). Glen Coal chose not to do so. Its argument that it had no incentive to litigate the issue because no bills had yet been submitted is unpersuasive.

In any event, neither the ALJ nor the Board held that Glen Coal was bound by the Social Security Administration proceeding. It was bound rather by its own agreement that Seals was disabled under the statute and that it was responsible for paying his medical charges for treatment of coal worker's pneumoconiosis, as the DOL argues. Glen Coal's agreement to pay for the treatment of Seals's "coal worker's pneumoconiosis," combined with its stipulation that Seals was totally disabled under the Black Lung Benefits Act, amounts to a concession that Seals had both clinical and legal pneumoconiosis. Although Glen Coal cites *Clinchfield Coal Co. v. Fuller,* 180 F.3d 622 (4th Cir.1999), in which the Fourth Circuit remanded because it held that employer had stipulated only to clinical pneumoconiosis, but not to legal pneumoconiosis, the *Fuller* distinction is not relevant here.

Further, in the decision on remand, the ALJ found that "[t]here is substantial evidence in the record that the treatment in question was related to Claimant's pneumoconiosis." The decision cited x-ray evidence from 1973 and 1990, Dr. McQuillan's opinion that the treatment was clearly for Seals's pneumoconiosis, Dr. Cander's finding that the use of bronchodilator drugs was justified for treatment of Seals's pneumoconiosis, and Dr. Kanwal's opinion, formed after treating Seals several times, that Seals's pneumoconiosis and COPD

were related. The ALJ did not err by finding this evidence sufficient to meet Seals's burden of showing by a preponderance of the evidence that the disputed medical treatments were necessary for treatment of his COPD, which is associated with his disabling legal pneumoconiosis.

■ Glen Coal's next argument is that "[t]here is no legal, medical, or factual support for the ALJ's and Board's presumption that the treating doctor's status in this case made his opinion reliable and more credible than all of the other evidence." The Board rejected this argument, stating that the ALJ "permissibly accorded greatest weight to the opinions of Dr. Kanwal, who was claimant's treating physician."

In black lung litigation, the opinions of treating physicians are not presumptively correct nor are they afforded automatic deference. *Eastover Mining Co. v. Williams,* 338 F.3d 501, 510–13 (6th Cir. 2003). Rather, "the opinions of treating physicians get the deference they deserve based on their power to persuade." *Id.* at 513. In other words, the weight accorded to a treating physician's opinion depends upon, among other factors, that physician's expertise and the extent of that physician's experience with the patient in question. *Id.; see also Peabody Coal Co. v. Groves,* 277 F.3d 829, 834–35 (6th Cir.2002).

The DOL's regulations, as recently revised, confirm the Sixth Circuit's approach to the question of weighing the treating doctor's opinion. "In determining whether the treatment is compensable, the opinion of the miner's treating physician may be entitled to controlling weight pursuant to § 718.104(d)." 20 C.F.R. § 725.701(f). Section 718.104(d), in turn, provides that, in weighing the medical evidence, the ALJ must consider the relationship between the miner and any treating physician. Specifically, the ALJ should consider the nature

of the relationship (*i.e.*, the opinion of a physician who has treated the miner for respiratory or pulmonary conditions is entitled to more weight than a physician who has treated the miner for non-respiratory conditions), the duration of the relationship, (*i.e.* whether the physician has observed the miner long enough to obtain a superior understanding of his or her condition), the frequency of treatment, and the extent of treatment, including the types of testing and examinations. 20 C.F.R. § 718.104(d)(1)-(4). The rule is designed "to recognize that a physician's professional relationship with the miner may enhance his insight into the miner's pulmonary condition." 65 Fed.Reg. 79920, 79923 (Dec. 20, 2000). "A treating physician may develop a more in-depth knowledge and understanding of the miner's respiratory and pulmonary condition than a physician who examines the miner only once or who reviews others' examination reports." *Id.*

In this case, the ALJ's finding that the treating physician's opinion was entitled to deference was supported by the evidence. The ALJ made a "reasoned judgment" about Dr. Kanwal's credibility, determining that the physician's opinion was well-reasoned and well-documented, that it was based on a thorough examination of Seals, and that his "actual treatment of the Claimant provided him with the unique access to Claimant's lung condition and enabled him to make a fuller assessment" of Seals's need for treatment. Dr. Kanwal, unlike the other physicians, had an opportunity to assess the effects of the disputed treatment on Seals's pneumoconiosis. Thus, under *Eastover Mining*, it was not improper for the ALJ to give additional weight to the treating physician's opinion.

Glen Coal's final argument is that the revised regulations may not be used to support the result in this case. The revised regulations codify the *Doris Coal* presumption and the permissibility of according the treating physician's opinion controlling weight. Glen Coal contends that "[t]hese revised rules may not be applied retroactively or at all to this claim because they clearly change the law. They provide for the very presumption of coverage that *Seals I* rejected." Glen Coal also contends that the DOL was without authority to pass the regulations because the regulations enlarge coverage, conflict with Congress' intent to keep the medical and entitlements inquiries separate, and violate the APA.

Both arguments are unpersuasive. The regulations became effective on January 19, 2001, and they were intended to apply to all cases pending on that date. 20 C.F.R. § 725.2; *Kentland Elkhorn Coal Corp. v. Hall*, 287 F.3d 555, 558 n. 1 (6th Cir.2002). Because Glen Coal's motion for reconsideration was pending at that time, it was proper to apply the revised regulations to the case. The Board did so, stating that the revised § 725.701 "is applicable" to the case "and now provides for a rebuttable presumption that claimant's medical expenses arose out of his treatment for pneumoconiosis, when he has shown that he is being treated for a pulmonary disorder." It held that Seals, "by *affirmatively proving* that he was being treated for pneumoconiosis, has not only met the standard previously delineated by the Sixth Circuit in [*Seals I*], but has also met the standard set forth at Section 725.701(e), (f) as revised." "Since claimant carried his burden of proof under the old law, a burden which is reduced by the revised regulation, the facts of the instant case do not support employer's argument that it is unduly prejudiced by the new law." Therefore, the Board declined to remand. This holding was correct. Because Seals met the higher burden of proof in establishing that his medical expenses were related to pneumoconiosis, he cer-

tainly could have met the lower burden (and the ALJ and the Board agreed that he did, in their decisions prior to the appeal in *Seals I*). A remand would serve no useful purpose.

 Also, the DOL had the authority to promulgate a regulation adopting the *Doris Coal* presumption, as this court explained in *Seals I*:

> *Greenwich Collieries* does not foreclose the use of all non-statutory presumptions. But the creation of such a presumption is either the job of the Secretary, through a reasonable interpretation of an ambiguous regulation, or through (preferably) promulgating a new regulation.... [I]t would not necessarily contravene *Greenwich Collieries* for the Secretary to adopt a regulation shifting the burden of production in the manner of *Doris Coal.*

*Seals I,* 147 F.3d at 517 (Boggs, J., concurring) (citation omitted). A separate opinion stated that "[a] *Doris Coal*-like presumption would be wholly consistent with the remedial purposes of the [Black Lung Benefits] Act and the principles on which it was enacted and amended" and that "[t]he Agency certainly has the prerogative to change its policies in the future" and adopt such a regulation. *Id.* at 522, 521 n. 5 (Moore, J., concurring in part and dissenting in part). Therefore, Glen Coal's final argument challenging the validity of the regulations fails.

## IV.

For the foregoing reasons, we affirm the Board's decision.