*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0107p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

EDGAR MARTIN,

*Petitioner,*

*v.*

No. 03-4646

LIGON PREPARATION COMPANY; OLD REPUBLIC
INSURANCE COMPANIES; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

On Appeal from the Benefits Review Board,
United States Department of Labor.
No. 03-0147 BLA.

Submitted: January 26, 2005

Decided and Filed: March 4, 2005

Before: MOORE and GILMAN, Circuit Judges; WEBER, District Judge.[*]

———————

## COUNSEL

**ON BRIEF:** Stephen A. Sanders, APPALACHIAN CITIZENS LAW CENTER, Prestonburg, Kentucky,
for Petitioner. Laura Metcoff Klaus, Mark E. Solomons, GREENBERG & TRAURIG, Washington, D.C.,
for Respondents.

———————

## OPINION

———————

RONALD LEE GILMAN, Circuit Judge. Edgar Martin appeals the decision of the Department of
Labor's Benefits Review Board (BRB) that denied him benefits under the Black Lung Benefits Act (BLBA),
30 U.S.C. §§ 901-44. The sole issue on appeal is whether the administrative law judge's (ALJ's) analysis
of the relative weight to accord the testimony of the three physicians who rendered an opinion in this case
is supported by substantial evidence. For the reasons set forth below, we **VACATE** the decision of the BRB
and **REMAND** the matter for further consideration by the ALJ.

———————

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

## I. BACKGROUND

Martin worked in a coal mine for 16 years in various capacities. His last mining job, in which he worked as a coal-truck driver for Ligon Preparation Company, ended in 1982. He is a lifelong smoker and has a history of heart disease.

In 1987, Martin applied for benefits under the BLBA. Martin's initial claim was denied, but he requested a modification of the decision in 1988. The ALJ again denied his claim, concluding that the evidence did not support a finding that Martin suffered from coal workers' pneumoconiosis (a respiratory impairment commonly known as "black-lung disease," which is caused by the inhalation of coal dust). The BRB affirmed the ALJ's decision in part and vacated and remanded it in part. Specifically, the BRB directed the ALJ to reconcile the conflicting opinions of three physicians. Two of those physicians, Bruce C. Broudy and Gregory J. Fino, concluded that Martin did not suffer from pneumoconiosis. They conceded, however, that pneumoconiosis could be diagnosed by the use of a blood-gas test administered after exercise that showed decreased oxygen levels. The third physician, Donald L. Rasmussen, diagnosed Martin with pneumoconiosis after administering the very type of exercise blood-gas test described by Drs. Broudy and Fino and observing the results that Drs. Broudy and Fino had acknowledged could be indicative of pneumoconiosis.

On remand, the ALJ concluded that Dr. Rasmussen's report was entitled to less weight than the reports of the other two physicians, despite finding "Dr. Rasmussen's report to be a 'well-reasoned' medical opinion, in the sense that Dr. Rasmussen discussed the clinical, diagnostic, and employment factors relevant to his diagnosis." But the ALJ determined "that Dr. Rasmussen's report carries less weight because it does not appear that Dr. Rasmussen was provided a complete medical record." Of particular concern to the ALJ was his belief that Dr. Rasmussen had diagnosed pneumoconiosis based on a single positive x-ray reading, albeit one from a physician highly qualified to interpret lung x-rays for pneumoconiosis. The ALJ also noted that Dr. Rasmussen had not discussed the negative x-ray readings or opinions of other physicians who had concluded that Martin did not have pneumoconiosis.

With respect to Dr. Broudy's medical opinion, the ALJ found that "it contains little rationale or explanation." The ALJ added that Dr. Broudy "was speaking in general terms" when he discussed the fact that decreased oxygen levels are suggestive of pneumoconiosis and that "[Dr. Broudy] did not review Dr. Rasmussen's studies, and he rendered no opinion upon those studies." Nevertheless, the ALJ concluded that Dr. Broudy's opinion was more persuasive than Dr. Rasmussen's "because Dr. Broudy had more information before him[] when rendering his opinion."

Finally, the ALJ determined that Dr. Fino's opinion should be given the greatest weight because Dr. Fino was able to review Martin's medical record in its entirety. The ALJ mistakenly believed that Dr. Fino had reviewed all of the test results obtained by Dr. Rasmussen and had explained why they did not support a finding of pneumoconiosis. In particular, the ALJ stated that

> I find that Dr. Fino's report affirmatively establishes that the impairment suffered by [Martin] is not coal mine dust related. His conclusions are well-reasoned and supported by the medical data upon which he relied. He is a pulmonary specialist who had a more complete medical history available to him than Dr. Rasmussen. His opinion has a better foundation, and when coupled with the previous opinions of record, result[s] in a finding that [Martin] has failed to establish the existence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a)(4).

Based on the testimony of Drs. Broudy and Fino, the ALJ determined that Martin did not suffer from pneumoconiosis and therefore was not entitled to benefits under the BLBA. Martin appealed the ALJ's decision to the BRB, which concluded that the ALJ's denial of benefits was supported by substantial evidence.

Martin now seeks review by this court, arguing that the ALJ's analysis of the three physicians' opinions is not supported by substantial evidence. He claims that the ALJ erred in concluding that (1) Dr. Rasmussen diagnosed only "clinical" pneumoconiosis, (2) Dr. Broudy's opinion on exercise blood-gas test results did not support a diagnosis of pneumoconiosis, and (3) Dr. Fino had reviewed and distinguished Dr. Rasmussen's exercise blood-gas results.

## II. ANALYSIS

### A.        Standard of review

We must affirm a decision of the BRB unless it has committed an error of law or exceeded its scope of review of the ALJ's findings. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). The ALJ's findings are conclusive if they are supported by substantial evidence and are in accordance with the applicable law. Even though we are reviewing the decision of the BRB, and not that of the ALJ, we do not consider whether the BRB's decision was supported by substantial evidence. Instead, we ask whether the BRB correctly concluded that substantial evidence supported the ALJ's decision. *Eastover Mining Co. v. Williams*, 383 F.3d 501, 508 n.9 (6th Cir. 2003). *Id.*

Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002). In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence. *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997). We will not reverse the conclusions of an ALJ that are supported by substantial evidence, even if we might have reached a different conclusion based on the facts in the record. *Groves*, 277 F.3d at 833.

### B.        The ALJ's analysis

In considering Martin's claim, the ALJ credited the opinions of Drs. Broudy and Fino, both of whom had determined that Martin did not suffer from pneumoconiosis. The ALJ conversely gave less weight to the opinion of Dr. Rasmussen, who concluded that Martin did suffer from pneumoconiosis. In our opinion, the ALJ erred in analyzing the relative import of the three physicians' opinions. We emphasize at the outset, however, that we are not independently deciding whether Dr. Rasmussen's opinion is entitled to more weight than Dr. Broudy's or Dr. Fino's. Rather, we simply believe that the ALJ's explanation for crediting the opinions of Drs. Broudy and Fino over Dr. Rasmussen's is not supported by substantial evidence. *See Dir., Office of Workers' Comp. Programs v. Congleton*, 743 F.2d 428, 430 (6th Cir. 1984) ("[The ALJ's] failure to explain his reason for crediting certain testimony while ignoring more substantial evidence would normally necessitate a remand with directions for more specific findings of fact.")

#### 1.        Dr. Rasmussen's opinion

The ALJ determined that Dr. Rasmussen had relied upon the results of his exercise blood-gas study and diffusing capacity study to determine that Martin "was suffering from a pulmonary disability," but added that, "[s]ignificantly, [Dr. Rasmussen] did not use them to find the existence of pneumoconiosis." Restating the ALJ's conclusion, the BRB explained that "Dr. Rasmussen's diagnosis of coal workers' pneumoconiosis constitutes a diagnosis of 'clinical' pneumoconiosis, not 'legal' pneumoconiosis." But the ALJ failed to adequately explain why Dr. Rasmussen's report did not support a finding of pneumoconiosis, and the BRB's explanation that Dr. Rasmussen diagnosed clinical but not legal pneumoconiosis is inaccurate as a matter of law.

The BRB's conclusion that Dr. Rasmussen diagnosed Martin with clinical pneumoconiosis as opposed to legal pneumoconiosis is problematic for two reasons. First, Dr. Rasmussen's report establishes that Dr. Rasmussen in fact diagnosed Martin with legal pneumoconiosis. Even setting aside Martin's positive x-ray reading, which the ALJ had already determined to be insufficient to establish

pneumoconiosis, Dr. Rasmussen's consideration of the other evidence—including a physical examination of Martin, a diffusing capacity test, arterial blood-gas studies, and Martin's personal and occupational history—alone would have been sufficient to support a finding of legal pneumoconiosis. *See* 20 C.F.R. § 718.202(a)(4). The second reason is that even if Dr. Rasmussen had diagnosed "only" clinical pneumoconiosis, as the BRB concluded, such a diagnosis would not disqualify Martin from receiving benefits under the BLBA. "[C]linical pneumoconiosis is only a small subset of the compensable afflictions that fall within the definition of legal pneumoconiosis under the Act." *Richardson v. Dir., Office of Workers' Comp. Programs*, 94 F.3d 164, 166 n.2 (4th Cir. 1996). Thus, an individual who has clinical pneumoconiosis necessarily has legal pneumoconiosis as well. *See Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 (4th Cir. 2000) (noting that "[l]egal pneumoconiosis is a much broader category of diseases, which includes but is not limited to medical, or 'coal workers,' pneumoconiosis").

### 2.     *Dr. Broudy's opinion*

The ALJ's reliance on Dr. Broudy's opinion is perhaps the most perplexing aspect of this case. Dr. Broudy's opinion did not focus on Martin's individual test results, whereas Dr. Rasmussen relied upon those very results to conclude that Martin suffered from pneumoconiosis. In addition, Dr. Broudy testified that an exercise blood-gas study can be indicative of an interstitial lung disease such as pneumoconiosis when the oxygen level is normal at rest and drops into the abnormal range when the patient exercises. When Dr. Rasmussen tested Martin, he observed exactly the drop in oxygen level as described by Dr. Broudy. Thus, according to Dr. Broudy's testimony, the results of Dr. Rasmussen's exercise blood-gas study directly reinforce Martin's claim that he suffers from pneumoconiosis. The fact that Dr. Broudy's testimony was hypothetical does not preclude it from supporting Dr. Rasmussen's finding of pneumoconiosis based on the blood-gas results. In sum, we find no rational explanation for the ALJ's conclusion that Dr. Broudy's opinion is more credible than Dr. Rasmussen's, especially after the ALJ determined that Dr. Broudy's opinion "contain[ed] little rationale or explanation" and that Dr. Rasmussen's was "well-reasoned."

### 3.     *Dr. Fino's opinion*

With respect to Dr. Fino's opinion, the ALJ determined that, "[t]aking into account Dr. Fino's excellent qualifications and the fact that he did have the opportunity to review more records than Dr. Rasmussen when rendering his opinion, [his opinion is] worthy of greater weight." We find two problems with this conclusion in light of the factual record.

First, Dr. Fino's credentials are not necessary "superior" to Dr. Rasmussen's. In echoing the ALJ's finding that Dr. Fino was a pulmonary specialist, the BRB stressed that Dr. Fino is Board-certified in both Internal Medicine and Pulmonary Disease, whereas Dr. Rasmussen is Board-certified in Internal Medicine only. But Dr. Rasmussen's curriculum vitae establishes his extensive experience in pulmonary medicine and in the specific area of coal workers' pneumoconiosis.

Second, the ALJ erred in finding that Dr. Fino had reviewed Dr. Rasmussen's exercise blood-gas and diffusing capacity results and had determined that they were not indicative of pneumoconiosis. The record in fact shows that Dr. Fino did not review all of Dr. Rasmussen's studies. Dr. Fino's report, dated March 30, 1999, lists the medical evidence he considered while reviewing Martin's medical records. The report includes a reference to the resting blood-gas results from Dr. Rasmussen, but not to the exercise blood-gas results. It goes on to explain that "to show that a patient has impairment proven by blood gases, an exercise study must be performed and a significant drop in the p02 with exercise into the hypoxic range must be determined." Even though Dr. Rasmussen's exercise blood-gas study showed precisely such a drop, Dr. Fino failed to comment on the study, concluding instead that "there is no medical basis in the literature to state that *resting* hypoxia in and of itself at the levels noted represent impairment." (Emphasis added.) Dr. Rasmussen's exercise blood-gas results therefore appear to undermine Dr. Fino's opinion, yet Dr. Fino offered no evidence to refute those results.

In sum, we are of the opinion that the ALJ's determination that the testimony of Drs. Broudy and Fino was more probative than Dr. Rasmussen's is inconsistent with the factual record. The failure of the ALJ to adequately explain this inconsistency precludes a finding that his opinion is supported by substantial evidence.

### III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the decision of the BRB and **REMAND** the matter for further consideration by the ALJ.