**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-2286**

SOUTHERN APPALACHIAN COAL COMPANY,

        Petitioner,

      v.

ALAN L. ADKINS; DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

On Petition for Review of an Order of the Benefits Review Board.
(09-0841-BLA)

Argued: December 6, 2011         Decided: March 1, 2012

Before WILKINSON, WYNN, and FLOYD, Circuit Judges.

Affirmed by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Wilkinson and Judge Floyd concurred.

**ARGUED:** David L. Yaussy, ROBINSON & MCELWEE, PLLC, Charleston, West Virginia, for Petitioner. Ryan Christopher Gilligan, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondents. **ON BRIEF:** Joseph E. Wolfe, WOLFE, WILLIAMS, RUTHERFORD & REYNOLDS, Norton, Virginia, for Respondent Adkins.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Southern Appalachian Coal Company challenges the award of benefits to Alan L. Adkins, a former coal mine employee, under the Black Lung Benefits Act ("Act"). With this appeal, Southern Appalachian essentially asks us to reweigh the evidence that was before the Administrative Law Judge ("ALJ") and come to a different conclusion. But this we may not do. Accordingly, we affirm the award of benefits to Adkins.

I.

Adkins spent fifteen years employed in coal mining. During that employment, Adkins worked underground, including as a roof bolt operator and a miner operator, both "dusty" jobs. J.A. 19, 20. Adkins also smoked cigarettes, from 1975 to 1990, which roughly corresponds to his tenure as a miner.

Adkins developed problems with breathing and exhaustion upon physical exertion. In June 2007, Adkins filed a claim for black lung benefits under the Act. Southern Appalachian contested, and a hearing was held. At the hearing, the ALJ had before him, among other things, the following medical evidence:

2

Dr. Randolph Forehand examined Adkins in August 2007 and concluded that Adkins had pneumoconiosis.[1]  Dr. Forehand stated, among other things, that Adkins's "coal mine dust exposure resulted in a significant respiratory impairment . . . which would prevent him from going back into the mines.  Coal mine dust exposure has led to legal coal workers' pneumoconiosis which has permanently and totally disabled him."  J.A. 73.

Dr. D.L. Rasmussen examined Adkins and concluded in May 2008 that, among other things, Adkins "has evidence to support a diagnosis of legal pneumoconiosis.  The patient has pneumoconiosis, (i.e. COPD/emphysema caused in significant part by coal mine dust exposure) which is a material contributing cause of his disabling lung disease."  J.A. 77.

Dr. Glen Baker examined Adkins and reported in July 2008 that, among other things, "the patient does have a chronic lung disease caused by his coal mine employment.  This is based on the presence of both clinical and legal pneumoconiosis."  J.A.

---

[1]  This Court has previously noted the "broad statutory definition of pneumoconiosis as 'a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment[,]'" as well as the regulatory definition of "legal pneumoconiosis" as "'a disease 'arising out of coal mine employment' includ[ing] *any* chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, *or substantially aggravated by*, dust exposure in coal mine employment.'" Gulf & Western Indus. v. Ling, 176 F.3d 226, 231 (4th Cir. 1999) (citations omitted).

88.  Dr. Baker indicated that Adkins was only partially, i.e., not totally disabled, stating: "He would have a class 2 or a 10 to 25% impairment of the whole person. . . .  This impairment is related to his pneumoconiosis and possibly to some extent his cigarette smoking history."  Id.

Dr. George Zaldivar examined Adkins's records in 2008 and 2009 and reported that Adkins did not have pneumoconiosis; Dr. Zaldivar instead theorized that Adkins may have pulmonary fibrosis caused by smoking.  Dr. Zaldivar stated, "[m]y opinion remains that Mr. Adkins does not suffer from coal workers' pneumoconiosis nor coal dust induced lung disease . . . ."  J.A. 112.

Dr. Kirk Hippensteel examined Adkins and Adkins's records in February 2009 and reviewed records again in May 2009 and concluded that Adkins "does not have evidence of legal pneumoconiosis . . . ."  J.A. 219.  Dr. Hippensteel concluded that Adkins had bronchitis, allergies, and cardiac disease unrelated to working in the mines.

After reviewing this medical evidence, the ALJ determined that Adkins had pneumoconiosis caused at least in part by 15 years' employment in coal mining, and found that he was totally disabled.  The ALJ therefore determined that Adkins was entitled to benefits under the Act.

4

Southern Appalachian appealed to the Benefits Review Board. A panel of three administrative appeals judges affirmed the ALJ's decision and order awarding benefits. The Benefits Review Board determined that the ALJ's decision and order "is rational, supported by substantial evidence and in accordance with applicable law." J.A. 241. Southern Appalachian now appeals to this Court.

## II.

On appeal, Southern Appalachian argues that the ALJ failed to: weigh all the evidence and consider certain medical opinions when concluding that Adkins had pneumoconiosis; accurately determine the length of Adkins's coal mine employment; and properly assess the cause of total disability. We address each argument in turn. In so doing, "[w]e undertake an independent review of the record, as in the place of the Board, to determine whether the ALJ's factual findings are based on substantial evidence in the record. We review questions of law *de novo*." Toler v. E. Associated Coal Co., 43 F.3d 109, 114 (4th Cir. 1995) (citation omitted).

## A.

Southern Appalachian first argues that the ALJ failed to weigh all the evidence as to whether Adkins has legal

5

pneumoconiosis and consider certain medical opinions in concluding that Adkins has legal pneumoconiosis.

At the outset, we note that "[t]o establish entitlement to benefits under the Act, a miner must prove that he has pneumoconiosis, that the disease was caused by his coal mine employment, and that he is totally disabled due to the disease." Doss v. Dir., Office of Workers' Comp. Programs, 53 F.3d 654, 658 (4th Cir. 1995). On appeal, we do not undertake to re-weigh conflicting evidence on these issues, make credibility determinations, or substitute our judgment for that of the ALJ. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Rather, "[w]here conflicting evidence allows reasonable minds to differ . . . , the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ). The issue before us, therefore, is not whether [the claimant has legal pneumoconiosis], but whether the ALJ's finding . . . is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quotation marks and citation omitted).

In this case, the ALJ had several conflicting medical reports before him. The one he chose to rely on most extensively, that of Dr. Rasmussen, states, among other things, that Adkins "has evidence to support a diagnosis of legal

6

pneumoconiosis. The patient has pneumoconiosis, (i.e. COPD/emphysema caused in significant part by coal mine dust exposure) which is a material contributing cause of his disabling lung disease." J.A. 77. The ALJ did not err in relying on this report, which he found credible because Dr. Rasmussen explained that Adkins's pulmonary disease was caused by both coal dust and cigarette smoke exposure and that it was impossible to separate the effects of the two.

Further, the main thrust of Dr. Rasmussen's report, i.e., that Adkins had legal pneumoconiosis and that his lung impairment was caused at least in significant part due to coal dust exposure, was supported by Dr. Baker, who concluded in his report that "the patient does have a chronic lung disease caused by his coal mine employment. This is based on the presence of both clinical and legal pneumoconiosis." J.A. 88. Similarly, Dr. Forehand concluded, in his report, that Adkins's "coal mine dust exposure resulted in a significant respiratory impairment . . . which would prevent him from going back into the mines. Coal mine dust exposure has led to legal coal workers' pneumoconiosis which has permanently and totally disabled him." J.A. 73.

Southern Appalachian is certainly correct that reports from Dr. Zaldivar and Dr. Hippensteel would have supported the conclusion that Adkins did not have legal pneumoconiosis. Dr.

7

Zaldivar stated in his report that "Mr. Adkins does not suffer from coal workers' pneumoconiosis nor coal dust induced lung disease . . . ." J.A. 112. And Dr. Hippensteel concluded that Adkins "does not have evidence of legal pneumoconiosis . . . ." J.A. 219.

We cannot agree with Southern Appalachian, however, that "the ALJ failed to consider the contrary opinions offered by Drs. Hippensteel and Zaldivar . . . ." Appellant's Br. at 15. The ALJ summarized the reports of Drs. Hippensteel and Zaldivar, just as he summarized the other doctors' reports. The ALJ then went on to discuss his determination as to the probative value of the various reports, ultimately concluding, among other things, that Dr. Rasmussen's opinion was "more clearly explained than those of Drs. Hippensteel and Zaldivar[]" and was "the most rational in this record." J.A. 232. The ALJ explained at some length the basis for these findings. Further, nothing in the ALJ's opinion suggests, as Southern Appalachian claims, that the ALJ impermissibly found that certain regulations created a presumption that obstructive lung impairments are always due to coal dust exposure. And finally, the ALJ did not err in crediting Dr. Rasmussen with "extensive experience in pulmonary medicine and in the specific area of coal workers' pneumoconiosis." Martin v. Ligon Preparation Co., 400 F.3d 302, 307 (6th Cir. 2005).

To be sure, the record shows evidence that would have supported a contrary conclusion by the ALJ, i.e., that Adkins did not suffer from pneumoconiosis and therefore was not entitled to benefits.  Nevertheless, there is substantial support in this record for the conclusion that the ALJ did reach.  Under these circumstances, we are not free to second-guess the ALJ.  Craig, 76 F.3d at 589.  We therefore reject Southern Appalachian's arguments regarding the ALJ's weighing of the evidence and failure to (sufficiently) consider the conflicting medical reports.

B.

Southern Appalachian next argues that the ALJ did not properly establish how long Adkins had worked as a miner, despite the ALJ's stating in his decision and order that he "accept[s] the Claimant's testimony that he has worked fifteen years in coal mine employment."  J.A. 226.  However, the Joint Appendix pages to which Southern Appalachian cites do not support its contention.  Indeed, one of the two cited pages establishes via Adkins's sworn testimony that Adkins worked in the coal mines from 1972 to 1987—i.e., fifteen years.

Despite Southern Appalachian's contention that the ALJ improperly relied on doctors' reports to determine the length of Adkins's mine employment, the ALJ made clear that he relied not

9

on them, but rather on Adkins's sworn testimony. That testimony was an appropriate evidentiary source under 20 CFR § 725.101(a)(32)(ii), which states, in pertinent part, that "[t]he dates and length of employment may be established by any credible evidence including (but not limited to) company records, pension records, earnings statements, coworker affidavits, and sworn testimony." Id. (emphasis added). Southern Appalachian has provided this Court with no basis to do anything other than affirm this aspect of the ALJ's decision and order.

C.

With its last argument, Southern Appalachian contends that the ALJ "erred in his assessment of the cause of total disability." J.A. 20. Here, again, Southern Appalachian essentially asks us to reweigh the evidence before the ALJ. And as we have already made clear, we may not do so. Hays, 907 F.2d at 1456. It is clear from the ALJ's decision and order that he thoroughly considered all of the medical reports before him and found in favor of Adkins based on substantial evidence.

Further, to the extent that Southern Appalachian argues that the ALJ mistakenly "referred to the cause of disability as the claimant's 'significant restrictive pulmonary impairment'" (Appellant's Br. at 20), we fail to see the salience of this

mistake, assuming simply for the sake of argument that it is one. After all, the ALJ unequivocally determined, based on substantial evidence, that Adkins had legal pneumoconiosis, caused at least in part by his prolonged mining employment, and that Adkins was totally disabled as a consequence. See Doss, 53 F.3d at 658.

## III.

In sum, the ALJ's determination of legal pneumoconiosis and length of mining employment were supported by substantial evidence, and the ALJ weighed all the evidence and explained his reasoning in reaching his determinations. Accordingly, we affirm the decision of the Benefits Review Board to uphold the ALJ's determination.

AFFIRMED